MARC DAWSON
P.O. Box 3030, B3-209L
High Desert State Prison
Susanville, Ca 96217-3030
CDC&R #P-13296

IN PRO PER

**O R I G I N A L**

FILED COMPLAINT RECEIVED

FEB 06 2008

NORTH... SAN JOSE ...FORNIA

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

MARC DAWSON,

           Plaintiff,

vs.

S. LATHAM, M. EDWARDS, B. JAIN,
M. MORGAN, M. MCLEAN, AND A. THACKER,
sued individually  and in their
official capacities,

           Defendants,

)
)
)
)
)
)
)
)
)
)
)
)

Case No.: C08 - 0741 JF

**COMPLAINT FOR DAMAGES
AND
DEMAND FOR JURY TRIAL**

### I.

### INTRODUCTION

1.    This is a complaint for damages and request for jury trial for the failure to provide care for a serious medical need, deliberate indifference, and due process violations by the medical staff while acting under the color of law and during the course of their official duties. Plaintiff was given a dosage of liquid medication that caused severe distress and injury. The Plaintiff's pleas for medical attention were not answered once he made staff aware that the Psych Tech (PT) gave him the wrong medication. The medical staff attemted to cover up the Psych Techs mistake with a series of delayed treatment and false statements in medical reports and appeal responses. The medication mistake cause Plaintiff immediate pain and distress while the delayed treatment caused permanent damage to the Plaintiff's left eye.

## II.

## JURISDICTION

2. This is a civil action authorized by 42 U.S.C. section 1983 in order to redress the failure to provide adequate medical treatment, deliberate indifference to a known medical need, and due process violations, rights secured by and under the Eighth Amendment of the United States Constitution. By utilizing a series of Inmate Appeals (602's), the Plaintiff has exhausted all administrative remedies as are available within the California Department of Corrections and Rehabilitation (CDC&R). At the time of the incidents, the Plaintiff was incarcerated within the CDC&R at Pelican Bay State Prison. There was a grievance procedure in this prison and the Plaintiff presented the facts alleged in this Complaint for reviews through the grievance system. All appeals were completed through the Director's level as required by the Title 15. The Third Level also exhausts administrative remedies. Exhibit "A", appeal log PBSP-06-01578, is an appeal against Defendant S. Latham. Exhibit "B", appeal log PBSP-07-00363, was against Defendants M. Edwards and B. Jain. Attached as Exhibit "C", appeal log PBSP-06-02533, is the appeal against the appeal reviewers involved with appeal investigations and decisions in regards to medical appeals. This appeal is for Defendants M. Morgan, S. Bliesner, R. Robinson, M. McLean, and A. Thacker. All appeals are complete and exhausts remedies, giving this Honorable Court action under 26 U.S.C 1343 to have jurisdiction in this matter. Monetary damages that the Plaintiff seeks are compensative and punitive.

## III.

## PARTIES

3. Plaintiff in this action is **MARC CHARLES DAWSON, CDC&R #P-13296**, and is incarcerated in High Desert State Prison at P.O. Box 3030, Susanville, California 96127.

2.

1      At all times mentioned herein, The Plaintiff, Marc Charles Dawson was in
2  the custody of the California Department of Corrections and Rehabilitation,
3  (CDC&R), and was under the care of the medical staff employed by the CDC&R at
4  Pelican Bay state Prison, (PBSP).

5      The Plaintiff is serving a 28 to life sentence. Plaintiff was convicted
6  and sentenced in Bakersfield, California, County of Kern, in 1998.

7      The Plaintiff, at the present time, is representing himself and proceed-
8  ing pro per.

9      4.  Defendant in this action is **S. LATHAM**, a Psych Tech employed by the
10 CDC&R at PBSP, P.O. Box 7500, Crescent CIty, California, 95531. Defendant is
11 sued in her individual and official capacity while employed as a Psych Tech,
12 (PT), and should not qualify for immunity.

13     5.  Defendant in this action is **M. EDWARDS**, a Registered Nurse (RN) em-
14 ployed by the CDC&R at PBSP, P.O. Box 7500, Crescent City, California, 95531.
15 Defendant is sued in her individual and official capacity as a RN and should
16 not qualify for immunity.

17     6.  Defendant in this action is **B. JAIN**, a Medical Doctor (MD) employed
18 by the CDC&R at PBSP, P.O. Box 7500, Crescent City, California, 95531. She is
19 being sued in her individual and official capacity as a doctor and should not
20 qualify for immunity.

21     7.  Defendant in this action is **M. MORGAN**, Senior Psych Tech (SPT), em-
22 ployed by the CDC&R at PBSP, P.O. Box 7500, Crescent City, California, 95531.
23 He is sued in his individual and official capacity and should not qualify for
24 immunity.

25     8.  Defendant in this action is **M. MCLEAN**, Health Care Manager (HCM) at
26 PBSP and employed by the CDC&R at P.O. BOx 7500, Crescent City, Ca 95531, and
27 sued in individual & official capacity and does not qualify for immunity.

28                                            3.

1    9.    Defendant in this action is **A. THACKER**, a Correctional Health Care
2  Administrator II (CHSA II) employed by CDC&R at PBSP, P.O. Box 7500, Crescent
3  City, Ca 95531, and sued in his individual and official capacity, and should
4  not qualify for immunity.

5                                **IV.**

6                                **FACTS**

7    10.  On June 8th., 2006, Defendant **S. LATHAM**, hereafter  referred to as
8  **LATHAM,** was working a double shift in unit A-1 at PBSP.

9    11.  **LATHAM** was in charge of distributing medication to the psychiatric
10  inmates housed in the CCCMS Ad-Seg building.

11    12.  **LATHAM** was the only PT on duty in A-1 at the PM medication pass.

12    13.  **LATHAM** approached Plaintiff's cell-front pushing a cart with the PM
13  medications (meds). The liquid meds were already poured out in  clear plastic
14  containers prior to reaching the Plaintiff's cell.  Plaintiff inquired about
15  this and **LATHAM** replied that she was "trying to save time".

16    14.  **LATHAM** handed the Plaintiff a clear  plastic container containing a
17  colorless liquid that appeared to be the medication that  Plaintiff  normally
18  received (i.e. 20cc's of Neurotin). Plaintiff accepted the meds,  immediately
19  drank it down. Liquid meds have a horrible taste and are  generally swallowed
20  rapidly so the taste doesn't linger.

21    15.  Plaintiff tasted a strong after-taste that wasn't  consistent  with
22  his normal meds and tried to spit out the medication but he had swallowed  it
23  rapidly and it was too late  to  expel. The Plaintiff immediately told **LATHAM**
24  that what he had just ingested was not his normal meds. **LATHAM**  insisted that
25  it was. The Plaintiff informed **LATHAM** that he had been taking Neurotin  for a
26  long time and was familiar with the taste, and what she had just given to him
27  was not his normal meds.

28                                4.

1   16.   LATHAM stated that she would check and left the tier. LATHAM came
2 back to the Plaintiff's cell ten to fifteen minutes later with another cup of
3 liquid medication. Plaintiff asked LATHAM what was going on and LATHAM stated
4 that the consistency of liquid in the first bottle was different from that of
5 the second bottle and that she wanted the Plaintiff to take the second cup of
6 medication.

7   17.   Plaintiff asked what was in the first cup and LATHAM said she did
8 not know and instructed the Plaintiff to take the second cup again. Plaintiff
9 asked her if it was okay to take this cup of medication on top of the initial
10 cup and LATHAM said that it was. Plaintiff followed her instructions and took
11 the second cup.

12   18.   Within approximately thirty minutes, Plaintiff began experiencing
13 disorientation and sleepiness. Plaintiff does not remember falling asleep but
14 his cell mate at the time informed him that he fell into a fitful sleep which
15 was filled with tossing and turning along with incoherent verbal outbursts.

16   19.   Plaintiff does not recall the waking hours of June 9th. Plaintiff
17 was informed by his cell mate that the Plaintiff did not eat any breakfast at
18 all and barely made it to the door to take the morning meds. Plaintiff became
19 aware of his surroundings around nine o-clock (AM) when an officer came to es-
20 cort the him to group therapy. Plaintiff still felt disorientated, had blurry
21 vision, especially in the left eye, had tense muscles, felt flushed, and felt
22 as if someone was pushing down on his head. Plaintiff also felt as if he were
23 on some type of amphetamine.

24   20.   Plaintiff was escorted to a "sit-down" holding cage to attend his
25 group therapy and was only there for a few moments before he began feeling in-
26 tense muscle spasms. Plaintiff notified MTA Girospe. MTA  Girospe immediately
27 had the Plaintiff escorted to the nurses office.

28

1    21.    Upon entering the nurses office, MTA Girospe informed **LATHAM** about

2    the Plaintiff's conditions. She instructed the escorting officer to place  the

3    Plaintiff into a "standing" holding cage. This was done without vital signs be-

4    ing taken. **LATHAM** asked the Plaintiff what was wrong and the Plaintiff explain-

5    ed what he was feeling. At that time, **LATHAM** stated to the Plaintiff that  "**it**

6    **was all in his head**". PLaintiff requested to have his vital signs taken to see

7    what was going on with his body and **LATHAM** refused to do so.

8    22.    The Plaintiff waited in the cage for Doctor  Hutchinson's arrival.

9    When the doctor came in, he asked the Plaintiff to explain what was wrong. The

10   Plaintiff told him about the medication mix up and what he went through on the

11   previous night along with what he was feeling at that time. Doctor  Hutchinson

12   asked **LATHAM what was in the first bottle of liquid medication and she replied**

13   that she didn't know. He then asked **LATHAM** where the bottle was and she stated

14   that she had poured the contents out and threw the bottle away on the previous

15   night. Doctor Hutchinson prescribed Benedryl and told the Plaintiff  to try to

16   get some sleep. He informed the Plaintiff that the Benedryl would help to ease

17   the feelings  that the Plaintiff was experiencing and might help the Plaintiff

18   to get some sleep. It should be noted that the PLaintiff's cell mate had to go

19   see the PT later and informed **LATHAM** that he and the Plaintiff had lived  with

20   each other for quite some time and that something was wrong with the Plaintiff

21   to which she informed him that it was all in the Plaintiff's head as well.

22   23.    The rest of June 9th is foggy. Plaintiff's cell mate informed  him

23   that the Plaintiff was curled up in bed talking incoherently for the most part

24   of it.

25   24.    The Plaintiff recalls waking up on the morning of June 10th. feel-

26   ing as if there was a constant pressure pushing down on his head and still had

27   muscle spasms. Plaintiff had blurred vision and a severe headache.

28                                    6.

25.     On the evening of June 10th., at the PM med pass, the Plaintiff made contact with RN Kirkpatrick. Plaintiff asked him if he knew what kind of meds were mistakingly given to him, and Kirkpatrick had no knowledge  of this incident taking place. At that time, Kirkpatrick asked what was wrong regarding the Plaintiff's speech as it was slurred. Plaintiff explained  everything that had happened and how he was still feeling. Kirkpatrick asked  Plaintiff, after hearing what had happened, when the last time his vitals were recorded. Plaintiff informed him that they had not been taken at all. Kirkpatrick immediately had the plaintiff escorted to the nurses office.

26.     Once Plaintiff arrived in the nurses office, Kirkpatrick began to check the Plaintiff's vitals. He asked when the wrong medication was given and the Plaintiff informed him that it was two days prior. Kirkpatrick stated that he could find nothing logged that would inform medical staff to be aware of the situation as should have been done per medical policy.

27.     RN Kirkpatrick became concerned after taking Plaintiff's  vital signs. He also noted tense muscles and spasms. Plaintiff's pupils were different sizes and reacted separately to light. He also showed the escort officers how different each eye was responding to light and asked the  Plaintiff if he would allow blood to be drawn to identify what was in his system. Plaintiff's response was "definitely". At that time, RN Kirkpatrick ordered the Plaintiff to be taken to the Critical Treatment Center (CTC).

28.     Plaintiff was seen by Defendant M. EDWARDS,  hereafter referred to as EDWARDS. EDWARDS noted the same symptoms as did Kirkpatrick. Please see Exhibit "D" for the diagnostics. EDWARDS stated that she did not know why the Plaintiff was escorted to the CTC and the Plaintiff explained to her what had taken place. EDWARDS stated, in front of the escort officers, that  there was nothing documented about any medication mix up. She became argumentive  after

1  the Plaintiff informed her that it was **LATHAM'S** error and she stated that the

2  PT would have documented any such incident. **EDWARDS** went on to state that the

3  medication in question should have been identified and no other medication be

4  given, if that was the case, because they may not have been chemically compat-

5  ible and complications could arise. After a phone call, **EDWARDS** informed the

6  Plaintiff that the only thing good for him was to sleep and issued some more

7  Benedryl. Plaintiff asked **EDWARDS** to draw blood, as RN Kirkpatrick wanted and

8  had sent the PLaintiff to CTC to have done in the first place. **EDWARDS** stated

9  that she didn't feel that drawing blood was necessary and sent the Plaintiff

10 back to his cell, advising him that she would put him on a sick-call list for

11 the following day. It should be noted that a doctor did, in fact, order blood

12 to be drawn the following week to identify what was in the Plaintiffs system.

13     29.     On June 11th., the Plaintiff refused all meds in order for his sy-

14 stem to clean itself out of the drugs. On June 12th., Plaintiff was feeling a

15 lot more orientated but extremely fatigued in his neck and shoulders, and his

16 vision was still blurry, especially in the left eye. If Plaintiff tried using

17 it to focus on something for very long, he would get a severe headache. These

18 eye problems still occur at the present and the left eye has not returned to

19 normal. On this day, the Plaintiff asked several officers if he was on a list

20 to see the doctor and was told that the doctor only comes on Tuesday's and on

21 Thursdays, regardless of the inmates needs to be seen.

22     30.     On june 13th., Plaintiff asked MTA Girospe if he was on the list

23 and was told "yes". Later that same day, he came to the Plaintiff's cell and

24 told the Plaintiff that he didn't know what was going on, but the Plaintiff's

25 name had been scratched from the list. He advised the Plaintiff to give him a

26 602 requesting medical treatment to which the Plaintiff did. See Exhibit "E".

27     31.     On June 14th., Plaintiff gave the 602 requesting treatment to MTA

28                                    8.

1 Girospe and received a response back stating that he was on the list to see the
2 doctor. See Exhibit "E".

3      32.    On June 15th., one week after the medication error, the Plaintiff
4 was finally seen by Defendant B. **JAIN**, hereafter referred to as **JAIN**. **JAIN** or-
5 dered a blood draw and an urinalysis done and the Plaintiff was under the per-
6 ception that she had made accurate entries into his medical file which turned
7 out to be not true.

8      33.    On June 21st., Plaintiff received copies of medical reports enter-
9 ed into his medical file. He found that **JAIN** had made several false statements
10 into his file that appeared to minimize the entire medication mishap and would
11 have gone unnoticed had the Plaintiff not been responsible enough to check out
12 his medical records. On this date, the Plaintiff filed a 602 in regards to the
13 discrepancies. See Exhibit "F".

14      34.    **JAIN'S** medical report from June 15th. is attached as  Exhibit "G".
15 Under the heading of "Plan", **JAIN** writes "in the clinic he was  noted to  have
16 RT eye twitching (**intentional**)...". This is a false statement. No where in the
17 CTC report (Exhibit "D") does it mention anything of the sort. Plaintiff never
18 was noted as doing anything intentional as **JAIN** stated. The right eye was  not
19 in question. **JAIN**, by her own words, would have anyone reading the medical re-
20 ports believe that the Plaintiff was doing things deliberately. Under "subjec-
21 tive", **JAIN** writes that "inmate states that his symptoms are improving and ext
22 twitching is gone now he has twitching in Lt eye only also c/o of  blurring in
23 the same eye. denies headache, but feels tight lump in back of head..." Also a
24 misrepresentation of what was said. Plaintiff told **JAIN** in the presence of two
25 escorting officers and MTA Girospe that he had experienced white starbursts in
26 the left eye, when it was shut, on June 9th. and 10th. and now was not able to
27 focus it properly and had headaches that felt like they were behind  left eye.

28                                    9.

1 Plaintiff notified **JAIN** that he could not properly focus his left eye and was
2 experiencing headaches that felt as if they were right behind the eye. This
3 was explained to **JAIN** twice during the visit as she seemed to be having prob-
4 lems understanding the situation. Plaintiff never brought up or complained a-
5 any eye twitching. Plaintiff also informed **JAIN** that the muscle that ran down
6 from the base of the skull to the spin kept tightening up. Plaintiff told the
7 defendant that he felt like a "razorback pig" because of the rigid muscle and
8 one of the escorting officers commented that he could see the ridge of muscle
9 when the Plaintiff put his head down. **JAIN** translated this statement into the
10 Plaintiff feels a light lump on the back of his head. **JAIN** further comments
11 in her entry that she didn't feel any neck rigidity, which was not accurate
12 because she only felt the sides of the Plaintiff's neck and not the back.

13    35.    On June 22nd., the Plaintiff was called into the nurses office in
14 A-1 for an interview with **JAIN**. **JAIN** was agitated and asked why the Plaintiff
15 was using a 602 in regards to her entries into his file. Plaintiff explained
16 to her that she had made several mistakes to which she became argumentive and
17 verbally hostile. At that point, the Plaintiff turned and asked MTA Girospe
18 and the escort officer who had been present during the last visit to verify
19 the Plaintiff's complaints to which they both did. **JAIN** became angry and told
20 the escort officers that the interview was over. Plaintiff received the 602
21 back, unanswered, but accompanied with a Physician's Progress note in an at-
22 tempt to correct the errors on **JAIN'S** behalf. This document is entered as Ex-
23 hibit "H". **JAIN'S** efforts to correct her mistakes fall short.

24    36.    On July 22nd, during a chronic care visit, Plaintiff inquired a-
25 bout the blood test and urinalysis that **JAIN** had ordered done. **JAIN** informed
26 the Plaintiff, after checking his computer medical file, that the blood test
27 was negative and that the Plaintiff had blood in his urine. Blood was noted,

28                                    10.

1 | but no actions were taken when the tests came in. This didn't seem right to the
2 | Plaintiff, so he obtained copies of the test results to examine for himself.

3 |     37.    Plaintiff received the medical reports and in the process of check-
4 | ing the urinalysis test results, Plaintiff found that the medical  records  de-
5 | partment had also sent him the blood test results. **JAIN had told the Plaintiff,**
6 | **during the previous visit, that the blood tests were negative.** A copy  of  the
7 | blood test is attached as Exhibit "I". **JAIN** was not truthful. The test  results
8 | show that Haldal and Artane were present in the Plaintiff's system a week after
9 | the medication incident happened. Plaintiff did not take either drug knowingly.

10 |     38.    At this point in time, the Plaintiff began to question the  actions
11 | of **LATHAM, EDWARDS,** and **JAIN.** Plaintiff obtained a copy of a page out of PBSP's
12 | Medication Management Manual, attached as Exhibit "J". Section "I" lays out the
13 | policy for medication errors and the actions to be taken when it happens. These
14 | procedures were not followed by **LATHAM** at all. The plaintiff was never monitor-
15 | ed and his vital signs were not taken until two days after the error. No  docu-
16 | mentation was recorded on the MAR, attached as Exhibit "K". A Physician was not
17 | notified. **LATHAM** did not file Medication Error Report. Attached a Exhibit  "L",
18 | Plaintiff  received a response from medical records indicating that  the report
19 | was not filed and did not exist.

20 |     39.    It was apparent to the Plaintiff that the Defendant's were attepmt-
21 | ing to make the whole incident go away as if it never happened. The lack of the
22 | procedures being followed, the delays in treatment, the constant  documentation
23 | mistakes and omissions, and the false statements about the blood test shows the
24 | obvious intent.

25 |     40.    The Plaintiff began using the inmate appeals (602)  process in order
26 | to address the situation. The 602 filed against **LATHAM** was filed on 6-27-06 and
27 | was deemed to be a complaint against staff. This 602 is Exhibit "A". The appeal

28 |

1  was assigned to M. MORGAN, hereafter referred to as MORGAN, to review.

2      41.   On August 10th., 2007, MORGAN made contact with the Plaintiff and
3  conducted an interview. Upon seeing who the reviewer would be, Plaintiff in-
4  formed MORGAN that he was uncomfortable with him doing the staff review. The
5  Plaintiff had seen MORGAN spending time with LATHAM many times during escorts
6  and group movements. The Plaintiff observed these two laughing, talking, and
7  eating lunch together on several occasions. Plaintiff told MORGAN due to the
8  fact that he had observed the close working relationship that MORGAN  shared
9  with LATHAM, the Plaintiff did not feel that he would get an fair  or impar-
10  tial review because of this.

11      42.   MORGAN informed the Plaintiff that "this mistake should have not
12  been pursued in the first place" and that "it should be dropped". The Plain-
13  tiff stated that he really didn't feel like he'd get a fair review after the
14  comments MORGAN had just made. MORGAN informed the Plaintiff that if  he did
15  not want to do the staff complaint review, MORGAN would be happy to have the
16  appeal dropped.

17      43.   Having no further choice in the matter, the Plaintiff  was forced
18  to have the interview with MORGAN. The Plaintiff discussed six different is-
19  sues of misconduct on the part of LATHAM. MORGAN, for the most part, defend-
20  ed LATHAM'S actions and tried to argue the points with the Plaintiff,  which
21  was not in the duties of the reviewer or the scope of the appeal. MORGAN was
22  to clarify any points needing clarification and record any additional state-
23  ments that the Plaintiff needed to add to the appeal.

24      44.   On October 6th., 2006, the appeal was returned to  the Plaintiff.
25  This was well outside the time frames set forth in the Title 15, in which it
26  states in section 3084.6, section (a)(3): "Second level responses  shall  be
27  completed within 20 working days, or 30 working days if first level is waiv-

28                                            12.

1  -ed pursuant to section 3084.5 (a)(3)." Mandatory language in bold). The 602

2  was advanced to the second level due to being a "staff complaint". After the

3  Plaintiff filed several "Inmate Request for Interview" forms with the appeal

4  coordinator, the medical department finally completed the review.

5      45.   The Plaintiff read through the entire review and discovered  that

6  there were numerous problems with the findings. These findings were reviewed

7  by A. **THACKER** and M. **MCLEAN**, hereafter referred to as **THACKER** and **MCLEAN** re-

8  spectively. Both of these Defendants are not only aware of medical policies,

9  but are an active part in making them and enforcing them at PBSB.  Their job

10 titles of "Correctional Health Care **Administrator**" and "Health Care **Manager**"

11 reflects their job duties and obligations. They should know policies.

12     46.   The Plaintiff found that **MORGAN** had, in fact, also  conducted the

13 interview with **LATHAM**, and, like the Plaintiff was worried would happen, had

14 hindered the Plaintiff's ability to have a fair and impartial hearing by in-

15 tentionally delivering false statements and omitting pertinent  information

16 crucial to the investigation.

17     47.   **MCLEAN** was assigned to also investigate the complaint but instead

18 of conducting her own interviews, she worked in unison with **MORGAN** using his

19 intentionally inaccurate information. **MCLEAN**, due to her official job title,

20 should have been aware of the inaccuracies but ignored them in an attempt to

21 clear **LATHAM'S**  name.

22     48.   **MCLEAN** failed to investigate the facts presented by the Plaintiff.

23 Being responsible for the policies that staff under her authority are to use

24 during the course of their duties, **MCLEAN** turned away from these procedures,

25 and would not address them. The Plaintiff showed a lack of owed duty  on the

26 part of **LATHAM** and used the PBSP's medical operation manual to show **LATHAM'S**

27 failure to follow procedure and **MCLEAN** failed to address on her own accord.

28                                    13.

49.    MCLEAN entered intentionally misleading and false information in her review. MCLEAN stated that LATHAM notify a doctor and record  the incident on 6-09-06. This is misleading and false. The incident occurred on the 8th. of June and, according to policy, monitoring and observation should've began on that date. It did not. In regards to LATHAM recording the incident on the 9th. is also false. Please see Exhibit "L". The medical records department clearly states that there was nothing entered on that date at all. Doctor Hutchinson made an entry, not LATHAM. MCLEAN'S statement is false.

50.    MCLEAN states that the Plaintiff was housed on the lower tier in A-1, a statement that would set up the Plaintiff as having access to  other medications. This is false. Not only did the Plaintiff never live in a cell on the bottom tier the entire time he was in A-1, he lived three cells from the end of the medication run on the top tier. MCLEAN'S statement is false.

51.    MCLEAN states that due to the way that the medication trays  are set up, the liquid medications would not be on the cart yet. The  defendant was wrong again. She failed to mention that the liquid meds were already on the carts, in the tray, prepoured by LATHAM into plastic cups. An important omission made by MCLEAN.

52.    MCLEAN states that bottles of liquid medications are hard to mix up. This is inaccurate. Other medical staff informed the Plaintiff that the bottles are similar in nature and mistakes happen on occasion especially if the bottles are all out for use.

53.    MCLEAN, in referencing the Haldol found in Plaintiff's system at the time of the blood draw, and omitting the Artane is meant to be misleading. She omits the fact that there was only a trace amount (0.5) of  Haldol foundand could have been an error. Other medical staff informed  the Plaintiff that trace amounts such as 0.5 are often the results of false positive

14.

1   test results from other meds or the combination of such. The drug that was in

2   question was Artane, which showed a level of 2.0 seven days after ingestion.

3   MCLEAN also fails to mention that no one in A-1 was receiving Haldol. Artane,

4   a clear liquid med, was on the cart.

5       54.    MCLEAN states that the Plaintiff was properly monitored throughout

6   the time of the incident. This is a complete falsehood. The Plaintiff's vital

7   signs were taken twice June 10th. by RN Kirkpatrick and EDWARDS. These vitals

8   were taken twenty minutes apart. The next time that the Plaintiff was seen or

9   monitored was a week later at the initial doctor's visit with JAIN. Plaintiff

10  was never on any regular monitoring system. MCLEAN'S statements are false.

11      55.    MCLEAN states in her report that inmates have traded and bartered

12  with drugs in the past. MCLEAN had no factual justification to insinuate that

13  the Plaintiff may have done such an act. She also fails to mention two very

14  important facts. The first being that A-1 was a "lock-up" unit and inmates do

15  not have the opportunity to move around without supervision. Second, she does

16  not mention that there were not any inmates, housed in "A" section, currently

17  taking liquid Artane at the time of the incident. The Plaintiff had no access

18  to the liquid Artane unless a medical staff member gave it to him.

19      56.    Plaintiff has never been accused of or involved with any type of

20  medication misuse and was one-hundred percent in compliance with the medica-

21  tion program and MCLEAN intentionally tried to defame Plaintiff by her insin-

22  uations, which were not in her job duties as reviewer to do.

23      57. THACKER, administrates policies in regards to the prison's medical

24  operations. in conducting the second level review, THACKER failed to evaluate

25  MORGAN and MCLEAN'S reviews. He failed to do any type of internal review his-

26  self. He failed to investigate the obvious failure to follow established pro-

27  cedures. He failed to address obvious inconsistencies in the reports. Instead

28
                                    15.

1  the Administrator of Prison Health Care simply ignored the incident, signing
2  off on the appeal.

## V.

## FIRST CLAIM FOR RELIEF

### SERIOUS DEPRIVATION OF A BASIC HUMAN NEED:
### FAILURE TO PROVIDE TREATMENT FOR A SERIOUS MEDICAL NEED

7    58.    Plaintiff realleges and incorporates herein  by reference  each
8  and every allegation contained in paragraphs 1 through 57.
9    59.    The unjustifiable deprivation of medical treatment  for a known
10  serious medical need, one that was brought about by the carelessness of defend-
11  ant LATHAM who knowingly gave the Plaintiff the wrong medication along  with
12  defendant EDAWRDS and JAIN'S failure to act upon a medical need once communi-
13  cated violated the Plaintiff's rights under 42 U.S.C. section 1983. A prison-
14  er is protected from deprivations of basic human needs under the Eighth Amend-
15  ment which forbids "cruel and unusual punishment" and governs the living con-
16  ditions of convicted prisoners.

## VI.

## SECOND CLAIM FOR RELIEF

### DELIBERATE INDIFFERENCE TO A KNOWN MEDICAL NEED

20    60.    Plaintiff realleges and incorporates herein  by reference  each
21  and every allegation contained in paragraphs 1 through 59.
22    61.    The deliberate indifference to serious medical needs of Plaintiff
23  constitutes the unnecessary and wanton infliction of pain and suffering which
24  is proscribed by the Eighth Amendment. Defendants LATHAM, EDWARDS, JAIN, MOR-
25  GAN, MCLEAN, and THACKER knew about or were made aware of a  serious  medical
26  situation and instead of acting upon it to rectify the problem, the defendants
27  ignored the situations and set about a series of delays in an attempt to make

28                                    16.

1   the matter disappear. Defendant's delays and denial of medical attention to
2   a known need, their lack of actions, and their culpable state of minds vio-
3   lates the Plaintiff's rights under 42 U.S.C. section 1983. A convicted pri-
4   soner is protected from the unnecessary and wanton infliction of pain.

## VII.

### THIRD CLAIM FOR RELIEF

#### FAILURE TO PROVIDE MEANINGFUL DUE PROCESS

8   62.    Plaintiff realleges and incorporates herein  by refernece each
9   and every allegation contained in paragraphs 1 through 61.

10  63.    Defendant's MORGAN, MCLEAN, and THACKER failure to provide the
11  Plaintiff a meaningful appeal review violated Plaintiff's right to due pro-
12  cess. Statutes within the Title 15 creates an entitlement to address griev-
13  ances. Explicit mandatory language is used, creating substantive predicates
14  requiring the decision-maker to exercise subjective judgment. Not providing
15  the Plaintiff with a fair and meaningful appeal review violates due process
16  especially when the lack of a meaningful review is intentionally manipulat-
17  ed to cloud the issues to a point of obscurity. The defendant's actions are
18  culpable and violate the Plaintiff's rights secured by the Fifth  Amendment
19  of the United States Constitution.

## VIII.

### PRAYER FOR RELIEF

22  1.    Plaintiff respectfully prays that this Honorable Court enters
23  judgment granting the following monetary relief in favor of the Plaintiff:
24  a. Award compensatory damages in the amount of Twenty Thousand Dollars,
25  ($20,000.00);

26  b. Award punitive damages from defendant LATHAM in the amount of Twenty
27  Thousand Dollars ($20,000.00);

28

1    c. Award punitive damages from defendants **EDWARDS** and **JAIN** in the amount

2    of Fifteen Thousand Dollars ($15,000.00);

3    d. Award punitive damages from defendant's **MORGAN, MCLEAN,** and **THACKER** in

4    the amount of Ten Thousand Dollars ($10,000.00);

5    e. Award court costs;

6    f. Award lawyers fees;

7    2. Award any other relief deemed necessary.

8

9

10   Dated: _Feb. 2nd, 2008_              Respectfully submitted,

11

12                                       _Marc Charles Dawson_

13                                       Marc Charles Dawson,  Plaintiff

14

15                    **VERIFICATION**

16   I, Marc Charles Dawson, the Plaintiff in this action, declares under the

17   penalty of perjury that the foregoing is accurate, correct, and true.

18

19   Dated: _Feb 2nd 2008_                _Marc Charles Dawson_

20                                        Marc Charles Dawson,  Plaintiff

21

22   ///

23   ///

24   ///

25

26

27

28                              18.

E X H I B I T   " A "

**STAFF COMPLAINT**
**PBSP**

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location/Institution/Parole Region

1. A06-01578

2. 

Category 7-6
Psych Tech
S. Latham

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|------------|------------------|
| MARC DAWSON | P13296 | Ad-Seg Pending Transfer | A1-203 |

**A. Describe Problem:** THIS IS THE 2ND FILING OF THIS 602 ALLEGING STAFF NEGLIGENCE ON THE PART OF THE PSYCH TECH/RN S. LATHAM. THE 1ST 602 WAS REJECTED BECAUSE OF LENGTH. I AM ALLEGING THAT S. LATHAM WAS NEGLIGENT IN HER REQUIRED DUTIES THAT MAY HAVE CAUSED PERMANENT DAMAGE. MY COMPLAINT IS AS FOLLOWS: ON JUNE 8TH, 2006, S. LATHAM WAS WORKING A DOUBLE SHIFT AND WAS PASSING OUT THE PM MEDS IN A-1. SHE GAVE ME A CUP OF LIQUID MEDICATION MEASURING 20 CC's. I DRANK IT DOWN AND IMMEDIATELY INFORMED HER THAT THE LIQUID MEDS SHE JUST GAVE ME WAS "NOT" MY NORMAL MEDICATION. I HAVE BEEN TAKING LIQUID NORMTIN FOR A VERY LONG TIME AND KNOW ITS TASTE. SHE INSISTED THAT IT WAS NORMTIN

If you need more space, attach one additional sheet.                (CONTINUED ON ADDITIONAL PAGE)

**B. Action Requested:** I'm REQUESTING Administrative Actions be taken AGAINST THIS RN. I AM ALSO REQUESTING A FORMAL INVESTIGATION THAT WILL EXAMINE HER ACTIONS. PLEASE EXHAUST MY STATE REMEDIES SO THAT I MAY SEEK DAMAGES ON A MEDICAL NEGLIGENCE TORT CLAIM. THANK YOU FOR YOUR TIME ON THIS MATTER.

Inmate/Parolee Signature: Marc Dawson          (Resubmitted)   Date Submitted: 6/29/06

**C. INFORMAL LEVEL** (Date Received: _____)

Staff Response: ~~Please Bypass "Staff Complaint"~~

**BYPASS**

Staff Signature: _____          Date Returned to Inmate: _____

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

STATE APPEALS BRANCH
RECEIVED OCT 12 2006

Signature: _____          Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim.          CDC Appeal Number: _____

Cw.   2nd/Hem
JUL 19 2006

First Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: Due Date:

Interviewed by:

BYPASS

Staff Signature: Title: Date Completed:

Division Head Approved: Returned

Signature: Title: Date to Inmate:

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response

BYPASS

Signature: Date Submitted:

Second Level ☐ Granted ☒ P. Granted ☒ Denied ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 7/19/06 Due Date: 8/30/06

☒ See Attached Letter

Signature: Carl K. Thacker A. THACKER, CHSA II Date Completed: 8/21/06

Warden/Superintendent Signature: M McClure Hen Date Returned to Inmate: 10/3/06

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Dissatisfied:
1). PT Latham gave me the wrong medication on 6-8-06. She did not notify anyone of anything on the night it happened.
2) PT Latham returned to my cell and gave me additional medication directly after the first cup and told me that there was something wrong with
(Continued on Additional Page)

Signature: Marc Dawson P13296 Date Submitted: 10-6-06

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☒ Denied ☐ Other

☒ See Attached Letter

Date: NOV 22 2006

CDC 602 (12/87)

### A DESCRIBE PROBLEM (CONTINUED):

AND I INSISTED THAT IT WAS NOT. SHE LEFT AND CAME BACK IN APPROXIMATELY 15 MINUTES WITH ANOTHER CUP HOLDING 20 CC'S OF LIQUID MEDICATION. AT THIS TIME, SHE TOLD ME THAT SHE CHECKED THE BOTTLE AND THAT THE CONSISTENCY WAS DIFFERENT FROM THE BOTTLE SHE USED FIRST COMPARED TO THAT OF THE SECOND BOTTLE. I ASKED WHAT THE FIRST BOTTLE WAS AND SHE SAID SHE DIDN'T KNOW. SHE INSTRUCTED ME TO TAKE THE SECOND CUP OF MEDICATION IN WHICH I COMPLIED. I DON'T RECALL WHAT HAPPENED LATER THAT EVENING, BUT MY CELLMATE ( M. STONE, J47168) TOLD ME THAT I FELL ASLEEP WITHIN 30 MINUTES AFTER TAKING THE MEDS. THIS IS NOT NORMAL FOR ME TO FALL ASLEEP SO EARLY. HE ALSO SAID THAT I WAS MUMBLING INCOHERENTLY. I'M NOT ABLE TO RECALL EARLY FRIDAY MORNING, BUT AT 9AM, I WAS TAKEN TO GROUP THERAPY AND PLACED IN A SIT-DOWN HOLDING CELL. I WAS FEELING "FOGGY" IN THOUGHT, BLURRED VISION, ESPECIALLY IN THE LEFT EYE, TENSE MUSCLES, A WARM, FLUSHED FEELING UNDER MY EYES, AND HAD THE SENSATION OF MY HEAD BEING PUSHED DOWN. WITHIN A SHORT PERIOD OF TIME IN THE HOLDING CELL, I BEGAN TO HAVE SEVERE MUSCLE SPASMS. NOT FEELING WELL, I NOTIFIED RN "VIC" WHO, IN TURN, NOTIFIED S. LATHAM. I WAS ESCORTED TO THE MEDICAL OFFICE IN THE A-1 ROTUNDA AND S. LATHAM HAD CO DIXON PLACE ME IN THE STAND-UP HOLDING CAGE. AT THIS TIME, SHE ASKED ME WHAT MY PROBLEM WAS AND I TOLD HER THAT I HAD NOT BEEN FEELING RIGHT SINCE THE MEDICATION MIX-UP ON THE NIGHT BEFORE. I ALSO EXPLAINED HOW I WAS FEELING. AFTER HEARING MY EXPLANATION, S. LATHAM TOLD ME THAT "IT WAS ALL IN MY HEAD". I ASKED HER TO TAKE MY VITALS TO PROVE THAT I WAS HAVING PROBLEMS AND SHE SAID IT WASN'T NECESSARY. DR. HUTCHINSON CAME IN AND I EX-PLAINED EVERYTHING TO HIM. HE ASKED S. LATHAM WHAT WAS IN THE FIRST BOTTLE. SHE SAID THAT SHE DIDN'T KNOW. HE ASKED WHERE THE BOTTLE WAS AND SHE TOLD HIM THAT SHE HAD POURED IT OUT THE NIGHT BEFORE AND HAD DISCARDED THE BOTTLE. DR. HUTCHINSON PRE-SCRIBED BENADRYL AND TOLD ME TO TRY TO SLEEP IT OFF. IT SHOULD BE NOTED THAT MY CELLMATE ALSO SAW S. LATHAM AND TOLD HER THAT I WAS ALL MESSED UP AND THAT HE KNEW THIS BECAUSE WE HAVE LIVED TOGETHER ALMOST A YEAR. SHE TOLD HIM THAT IT WAS ALL IN MY HEAD AS WELL. SOMETHING OF WHICH SHE HAD NO REASON TO TELL ANOTHER INMATE THAT WAS REPORTING A MEDICAL INCIDENT. I SLEPT ALOT FROM FRIDAY THROUGH SATURDAY. MY CELLY TOLD ME THAT I WAS IN THE FETAL POSITION AND MAKING SOUNDS WHILE ASLEEP. BY SATURDAYS PM MEDICATION PASS, I COULDN'T STAND IT NO MORE AND TRIED TO ASK PSYCH TECH I.N. KARKATTULY WHAT WAS WRONG WITH ME. HE WAS CONCERNED WITH MY SPEECH AND IMMEDIATELY PULLED ME OUT AND TOOK MY VITALS. I INFORMED HIM ABOUT THE PROBLEM ON THURSDAY NIGHT AND HE CHECKED THE FILES AND COULDN'T FIND ANY MENTION OF THE INCIDENT. TWO NIGHTS LATER, RN KARKATTULY WAS THE FIRST PERSON TO CHECK MY VITALS. HE NOTED MUSCLE TENSENESS AND SPASMS AND FOUND THAT MY PUPILS WERE DIFFERENT SIZES AND EACH REACTING DIFFERENTLY TO LIGHT. HE EVEN SHOWED THE 2 ESCORTING OFFICERS (C/O'S HUTCHISON AND RUTLEGE). HE ASKED IF I WOULD LET THEM DRAW BLOOD AT THE CTC TO FIND OUT WHAT WAS IN ME AND I TOLD HIM "DEFINITELY". HE SENT ME TO THE CTC AND RN EDWARDS NOTED THE PROBLEMS WITH MY EYES AND MUSCLE SPASMS. SHE STATED, IN FRONT OF THE 2 ESCORTING OFFICERS, THAT THERE WAS NOTHING DOCUMENTED CONCERNING THE POSSIBILITY OF A MEDICATION MIX-UP. I HAD TO LITERALLY INTERUPT HER WHILE SHE WAS ON THE PHONE TO GET IT ACROSS TO HER THAT I WAS GIVEN THE WRONG MEDICATION. SHE STATED, IN FRONT OF THE ESCORTING OFFICERS AND THE CTC RNER THAT THE UNKNOWN LIQUID SHOULD HAVE BEEN IDENTIFIED AND NO OTHER MEDICATIONS SHOULD HAVE BEEN GIVEN BECAUSE THEY MAY NOT HAVE BEEN CHEMICALLY COMPATIBLE. SHE TOLD ME TO TAKE SOME MORE BENADRYL, DRINK ALOT OF WATER, AND GET MORE SLEEP. I ASKED ABOUT THE BLOOD TEST AND SHE SAID IT WAS TOO LATE FOR ONE. SHE TOLD ME THAT I WAS ON THE BENADRYL CURE FOR MONDAY. SINCE THAT TIME, ALL OF THE SYMPTOMS HAVE STOPPED WITH THE EXCEPTION OF BLURRED VISION IN MY LEFT EYE. I HAVE SEEN THE OPTOMETRIST WHO HAS ORDERED GLASSES TO BE MADE TO TRY TO GET RID OF THE BLURRINESS. I HAD ABSOLUTELY NO BLURRINESS IN THIS EYE BEFORE THIS INCIDENT HAPPENED. SINCE THIS INCIDENT HAPPENED, I HAVE SPOKEN TO MEDICAL STAFF AND HAVE FOUND OUT THAT S. LATHAM DID NOT FOLLOW MEDICAL PROCEDURES THAT SOMEONE WITH HER TRAINING SHOULD HAVE. I FEEL THAT SHE HAS ACTED NEGLIGENT AND UNPROFESSIONAL FOR THE FOLLOWING REASONS:

1) SHE ISSUED ME 20 CC'S - ALMOST 3/4'S OF A FLUID OUNCE OF AN UNIDENTIFIED MEDICATION THAT SHE ADMITTED TO NOT KNOWING WHAT IT WAS AND INSTRUCTED ME TO TAKE

* Continued On Back * * Permanent Appeal Attachment - Do Not Remove *

An additional 20 cc's of LIQUID NEURONTIN without REGARD to CURRENT COMPATIBILITY.

2) SHE DID NOT DOCUMENT THIS IN A MANNER THAT WOULD NOTIFY THE NEXT SHIFT OR ANYONE THEREAFTER. THAT THERE MAY BE A PROBLEM.

3) SHE DID NOT BEGIN 'OBSERVATION' THAT IS NORMALLY DONE ON INMATES WHO HAVE TAKEN UNKNOWN SUBSTANCES.

4) SHE NEVER TOOK MY VITALS OR CHECKED ME OUT EVEN WHEN REQUESTING IT ON THE FRIDAY VISIT.

5) VERBALLY INFORMED ME AND ANOTHER INMATE THAT THE PROBLEMS I WAS HAVING WERE "ALL IN MY HEAD".

6) SHE POURED OUT THE LIQUID AND DISPOSED OF THE BOTTLES (ALLEGEDLY) WITHOUT HAVING THE UNKNOWN LIQUID IDENTIFIED.

IT IS MY PERSONAL BELIEF, BASED ON MY SYMPTOMS AND HER ACTIONS, S. LATIMER GAVE ME THE WRONG MEDICATION IN A LARGE AMOUNT. SHE FOUND OUT AND TRIED TO COVER IT UP BY NOT TAKING MY VITALS AND NOT PLACING ME ON ANY TYPE OF OBSERVATION. THE FACT THAT SHE TOLD THE DOCTOR THAT SHE HAD POURED OUT THE LIQUID AND DISPOSED OF THE BOTTLES WITHOUT IDENTIFYING THE LIQUID SHOWS A PROBLEM IN ITSELF. I AM ALLEGING MISCONDUCT ON THIS STAFF MEMBER. NEGLIGENCE THAT MAY HAVE PERMANTLY DAMAGED MY LEFT EYE. I HAVE TO COMPLETELY COVER MY LEFT EYE JUST TO WRITE THIS SMALL WRITING. SHE HAS CAUSED THIS.

<p style="text-align:center">End of "A. Describe Problem"</p>

Note to Appeals Coordinator: No "Rights and Responsibility" Statement are available to me but I understand the statement as described in 3391 (d) and agree to it in all ways.

Appeal History:

The original Appeal was filed on 6-13-06, well within the time limits set forth in the Title 15. On 6-26-06, the Appeals Co-ordinator rejected the original appeal because he did not have the authority to allow more than one additional page. I have cut down on the verbilage and wrote very small in order to bring this down to one additional page. On 6-27-06, one day after receiving the rejection slip, I have immediately rewrote and resubmitted this "Staff Complaint" against this medical staff member.

<p style="text-align:center">— Reprint Appeal Attachment — Do Not Remove —</p>

the first batch.

3) No one was notified on the night that the mix-up happened. I challenge anyone to produce any records showing a date of 6-8-06 because I've reviewed my medical records and none exists.

4) A medication Incident Report was not filed.

5) PT Latham never had the liquid identified And told Doctor Hutchinson, as documented in his 6-9-06 notes, that she "threw the bottle away".

6) At no time on 6-8-06 or 6-9-06 were my vital signs ever taken nor was I monitored. The LVN on Saturday Night - the one sending me to the CTC, didn't even know anything about it.

7) How can anyone state that I received follow-up care in a timely manner when, as far as they knew, I could have had poison in me!

8) The reviewer fails to note that PT Latham pre-pours the Liquid Medications in the nurses office and not in front of the cell-front. Just the fact that other medications showed up in my urine indicates the mix-up. Furthermore, there was no Artane or Haladol on the cart and had to come from the nurses station. I have zero access to these meds and zero access to inmates taking them!

9) I was not housed on the bottom tier - I've never been on the bottom tier while in Ad-Seg. The reviewer has erred again.

10) The reviewer is attempting to state that I took/bartered another inmates medication. That is wrong. Artane only comes in liquid form now. As for Haladol, I have no idea what that even is! The reviewer continues to err and try to shift blame to someone who could not possibly have had access to these meds!

over →

11) How can the reviewer find misconduct when PT Latham did not notify anyone on the night it happened, through the bottle away before it could be identified, and not once took my vital signs? That's misconduct on the behalf of a medical staff member who should have known better.

I'm trying to afford the CDC+R the opportunity to deal with this situation within the department, but when the reviewer states erroneous facts, which are not facts at all, and then tries to shift blame to me, It makes me want to take this further because I have the documents and staff witnesses to support my allegations! Pure and simple, PT Latham gave me the wrong meds and tried to wait it out, hoping I would be fine. I was not. The only reason she noted it on the 9th was because I had to be removed from group therapy and this forced her hand. The Reviewer at the Directors level only has to review the document in my file to see what happened.

As a final note - it should be noted that the Appeal time limit were not adhered to and the 2nd level response was over 30 days over-due.

Please take it upon yourself to review this matter and put dates and events together. This went down on 6/8/06 not 6/9/06.

Thank you

STATE OF CALIFORNIA                                                    DEPARTMENT OF CORRECTIONS

# RIGHTS AND RESPONSIBILITY STATEMENT / INFORMATION ADVISORY
# STAFF COMPLAINT / PEACE OFFICER

### Please read, and sign this form in front of a staff witness.

**Any inmate wishing to file a staff complaint must read and sign the following statement. As this is sworn testimony, this form must be signed in front of the staff member conducting the investigation into the complaint. Failure to sign this form in front of a staff member will be considered refusal to cooperate with the appeal process and the appeal will be cancelled.**

You have the right to make a complaint against a Peace Officer for any improper conduct. California law requires and this agency has a procedure to investigate inmate's complaints. You have the right to a written description of this procedure. This agency may find after investigation that there is not enough evidence to warrant action on your complaint; even if that is the case, you have the right to make a complaint and have it investigated if you believe an Peace Officer behaved improperly. This complaint and any report of findings relating to complaints must be retained by this agency for at least 5 years.

It is against the law to make a complaint that you know to be false. If you make a complaint against an officer knowing that it is false, you can be prosecuted. In addition, an inmate who makes a complaint against a departmental peace officer, knowing it is false may be issued a serious disciplinary rule violation in addition to criminal prosecution.

I certify or declare under penalty of perjury under the laws of the state of California that the information contained within the attached appeal form CDC 602, dated ___6-27-06___ is true and correct, under penalty of perjury, and I swear under oath under penalty of perjury that the aforementioned information is true and correct, executed this ___8___ day of ___Aug 06___, at Pelican Bay State Prison in Crescent City, California.

| INMATE / PAROLEE PRINTED NAME | INMATE / PAROLEE'S SIGNATURE | CDC NUMBER | |
|---|---|---|---|
| Marc Dawson | | P13296 | |
| RECEIVING STAFF'S PRINTED NAME | RECEIVING STAFF'S SIGNATURE | DATE SIGNED | |
| MARK MORGAN | M Morgan | 8-10-06 | |

## PERMANENT ATTACHMENT TO CDC FORM 602 / DO NOT REMOVE

( CDC Form 1858 )                                    ( 1858-98.DOC  updated  October 22, 1998)

SECOND LEVEL APPEAL RESPONSE

RE:    PELICAN BAY STATE PRISON
       Appeal Log _A-06-01578_____
       Inmate: _Dawson, #P-13296_____

This matter was reviewed by MAUREEN MCLEAN, FNP, Health Care Manager at Pelican Bay
State Prison (PBSP). A. Thacker, CHSA II, conducted the Appeal at the Second Level of
Review on August 21, 2006.

**APPEAL ISSUE:** You state that this is the second filing of this 602 alleging staff negligence on the part of the
Psych Tech/RN S. Latham. You claim that the first 602 was rejected because of length. You allege that S. Latham
was negligent in her required duties that may have caused permanent damage and your complaint is as follows: On
June 8, 2006, S. Latham was working a double shift and was passing out the PM meds in A-1, when she gave you a
cup of liquid medication measuring 20 cc's. You state that you drank it down and immediately informed her that the
liquid medication she just gave you was "not" your normal medication. You state that you have been taking liquid
Neurontin for a very long time and know its' taste, but LPT Latham insisted that it was Neurontin and you insisted
that it was not, so LPT Latham left and came back in approximately 15 minutes with another cup holding 20 cc's of
liquid medication. You state that she told you that she checked the bottle and that the consistency was different
from the bottle she used first compared to that of the second bottle. You state that you asked what the first bottle
was and she said she didn't know and she instructed you to take the second cup of medication, which you complied
and you don't recall what happened later that evening, but you claim that your cellmate (M. Stone, #T-47168) told
you that you fell asleep within 30 minutes after taking the meds and this is not normal for you to fall asleep so early.
You state that your cellmate also stated that you were mumbling incoherently and you state that you are not able to
recall early Friday morning, but at 9:00 a.m., you were taken to group therapy and placed in a "sit down" holding
cell and was feeling "foggy" in thought, blurred vision (especially in the left eye), tense muscles, a warm flushed
feeling under your eyes, and had the sensation of your head being pushed down. You state that within a short period
of time in the holding cell, you began to have severe muscle spasms and not feeling well, so you notified the RN,
"Vic", who, in turn, notified S. Latham and you were escorted to the medical office in the A-1 rotunda and S.
Latham had C/O Dixon place you in the stand-up holding cell. At this time, you state that S. Latham asked you
what your problem was and you told her that you were not feeling right since the medication mix-up on the night
before and you also explained how you were feeling and after hearing your explanation, S. Latham told you that "it
was all in your head", so you asked her to take your vitals to prove that you were having problems and she said it
wasn't necessary. You state that Dr. Hutchinson came in and you explained everything to him and Dr. Hutchinson
asked S. Latham what was in the first bottle and she said that she didn't know, so he asked where the bottle was and
she told him that she had poured it out the night before and had discarded the bottle. You claim that Dr. Hutchinson
then prescribed Benadryl and told you to try to sleep it off and it should be noted that your cellmate also saw S.
Latham and told her that you were all messed up and that he knew this because they have lived together almost a
year, but she told him that it was "all in his head" as well, something of which she had no reason to tell another
inmate that was reporting a medical incident. You claim you slept a lot from Friday through Saturday and your
cellmate told you that you were in the fetal position and making sounds while asleep. You state that by Saturday
AM medication pass, you couldn't stand it anymore and tried to ask Psych Tech Ian Kirkpatrick what was wrong
with you, and Psych Tech Kirkpatrick was concerned with your speech and immediately pulled you out and took
your vitals. You informed Psych Tech Kirkpatrick about the problem on Thursday night and Psych Tech
Kirkpatrick was the first person to check your vitals and he noted muscle tenseness and spasms and found your
pupils were different sizes and each reacted differently to light. You claim that Psych Tech Kirkpatrick even
showed the 2 escorting officers (Hutchinson and Rutlege) and he asked if you would let them draw blood at the CTC
to find out what was in you and you told him "definitely", so he sent you to the CTC and RN Edwards noted the
problem with your eyes and muscles spasms and she stated in front of the 2 escorting officers that there was nothing
documented concerning the possibility of a medication mix-up, so you had to literally interrupt her while she was on
the phone to get it across to her that you were given the wrong medication, to which she stated in front of the
escorting officers and the CTC Rover that the unknown liquid should have been identified and no other medication
would have been given because they may not have been chemically compatible, so she told you to take some more
Benadryl and drink a lot of water and get more sleep, so you asked about the blood test and she stated it was too late
for one and she told you that you were on the doctor's line for Monday. You state that since that time, all of the
symptoms have stopped with the exception of the blurred vision in your left eye and you have seen the Optometrist
who has ordered glasses to be made to try and get rid of the blurriness. You claim that you had absolutely no
blurring in this eye before this incident happened and since the incident, you have spoken to the medical staff and
have found out that S. Latham did not follow medical procedures that someone with her training should have and
you feel that she acted negligently and unprofessionally for the following reasons: 1) she issued you 20 cc's or

almost ¾ of a fluid ounce of unidentified medication that she admitted to not knowing what it was and instructed you to take an additional 20 cc's of liquid Neurontin without regard to chemical compatibility; 2) she did not document this in a manner that would notify the next shift or anyone thereafter that there may be a problem; 3) she did not begin "observation" that is normally done on inmates who have taken unknown substances; 4) she never took your vitals or checked you out even when requesting it on the Friday visit; 5) she verbally informed you and another inmate that the problems you were having were "all in his head"; and 6) she poured out the liquid and disposed of the bottle (allegedly) without having the unknown liquid identified. You personally believe that based on your symptoms and her actions, S. Latham gave you the wrong medication in a large amount and then she found out and tried to cover it up by not taking your vitals and not placing you on any type of observation, and the fact that she told the doctor that she had poured out the liquid and disposed of the bottle without identifying the liquid show a problem in itself, so you are alleging misconduct on the staff member and negligence that may have permanently damaged your left eye, because you have to completely cover your left eye to write this small writing and she has caused that. You are requesting administrative actions be taken against this RN and you are requesting a formal investigation that will examine her actions. You want them to exhaust your state remedies so that you may seek damages on a medical negligence tort claim. You note that no Right and Responsibility statement was available to you, but you understand the statement as described in 3391 (d) and agree to it in all ways. You further notes that the original appeal was filed on 6/13/06, well within the time limits set forth in Title 15 and on 6/16/06, the Appeals Coordinator rejected the original appeal because he did not have the authority to allow you more than one additional paper, so you have cut down on the verbage and written very small in order to bring this down to one additional page. You state that on 6/27/06, one day after receiving the rejection slip, you have immediately rewritten and resubmitted this "Staff Complaint" against this medical staff member. A review of your appeal was completed. Your appeal with the attachments and your requested action received careful consideration. M. Morgan, Senior Psychiatric Technician, was assigned to review the appeal. He interviewed you at the cell front of ASU A-1 203 on August 10, 2006. You stated that Psychiatric Technician Sherri Latham administered two (2) doses of medication and you reported that the second dose was his prescription for Neurontin. You stated this happened on the 3rd watch on June 8, 2006 and after taking the two doses of medication, you reported going to sleep and the next morning on June 9, 2006, you reported "feeling foggy" and had pressure in your head with "blurred vision". Dr. Hutchinson prescribed Benadryl and bed rest. You stated that the content of his 602-appeal is correct and you signed the CDCR form 1858 and completed the Advisement of Rights form. Psychiatric Technician Sherri Latham was interviewed by M. Morgan on August 10, 2006. Since adequate documentation was found in MPIMS, it was felt that no further information was needed from additional witnesses. A thorough review of the allegation presented in this completed was completed. Based on this review, the action requested to resolve this appeal was DENIED. Additionally the following determination has been made that your allegations of staff misconduct are as follows: NOT SUSTAINED. Ms. Latham recorded your complaint and notified the unit physician. When you made your symptoms known to staff on 6/9/06, you were treated and monitored as required. This is also documented in MPIMS notes from 6/9/06 by Psych Tech Latham and Dr. Hutchinson. Ms. Latham also noted the episode of the night before in MPIMS. Your follow-up care was provided in a timely manner per the notes dated 6/10/06 from M. Edwards, RN, and MPIMS notes dated 6/15/06 from Dr. Jain. A lab test drawn on 6/16/06 indicates you were positive for Haldol and Artane. The ASU 1 does not have any liquid Haldol on the medication cart. At the time of the episode, one inmate had an order for liquid Artane. Inmate Dawson was housed on the bottom tier and the way the medications are passed is two (2) trays stacked on top of each other. The bottom tier is passed first and the second tier is last. This means the liquid Artane was not on the medication cart when Inmate Dawson received his medication. At the time of the episode, inmates on ASU 1 were receiving Haldol and Artane in pill form. Inmate's on ASU 1 have traded and bartered medication in the past. The Neurontin is stored in the refrigerator and Artane is stored on top of the medication cart. Therefore it is hard to confuse the two medications as one is warm and the other is cold. However, there is no preponderance of evidence either way, in which you came to test positive for Haldol and Artane. In the event staff misconduct is sustained, the institution's Administration will take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public, or the inmate population and will not be released to the inmate. Although the inmate has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. The conclusion of the Reviewer is that the appeal was DENIED, since the requested actions are Administrative in nature and beyond the scope of the appeal process. The reviewer made a conclusion as to the allegations of misconduct, that they were NOT SUSTAINED. The First Level Review constituted a Fact-Finding Inquiry as requested by the Chief Deputy Warden. Your appeal was then moved to the second level of review on 7/19/06.

**FINDINGS:** A review of your appeal has been completed. Your appeal with the attachments and your requested action has received careful consideration. I, M. McLean, FNP, Health Care Manager, was assigned to investigate your allegations. A. Thacker, CHSA II, reviewed your medical file and responses on August 21, 2006. The Fact-Finding Review conducted by the First Level Reviewer was complete and you received adequate and appropriate care and treatment for

the condition and symptoms described. The administrative actions requested were denied, but since an appeal inquiry did take place, that requested action is determined to be granted.

**DECISION:** The Appeal is Partially Granted.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

_8/21/06_
Acel K. Thacker          Date
Correctional Health Services Administrator II

9/21/06
M. McLean, FNP          Date
Health Care Manager

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA  94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date:

NOV 2 2 2006

In re:    Dawson, P-13296
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA  95531-7000

IAB Case No.: 0604391        Local Log No.: PBSP 06-01578

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain.  All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that Registered Nurse (RN) S. Latham provided him the wrong medication which made him very ill and cause blurriness to his vision.  The appellant contends that RN Latham then attempted to cover up the misconduct and failed to provide timely medical treatment for his symptoms.  The appellant requests to exhaust his administrative remedies so that he can seek monetary compensation in the courts.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant has not been subjected to misconduct on the part of named staff.  The reviewer affirms that appropriate supervisory staff have been assigned to conduct an inquiry into this matter.  M. McLean, Health Care Manager, reviewed the submitted material and interviewed the involved parties.  Based upon developed information, it was determined that the allegation of staff misconduct was NOT SUSTAINED.  In order to determine the facts, the inquiry arising from this appeal included his interview; interview of department employees; and review of current policies, laws, and procedures.  Additional research may have included interviews of other inmate's, review of the appellant's central file and medical file.  The Second Level of Review (SLR) denied the appeal.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.  FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the SLR.  In the event that staff misconduct was substantiated, the institution would take the appropriate course of action.  The Director's Level of Review (DLR) notes that in this case the reviewer determined that the appellants allegations were NOT SUSTAINED.  All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant.  In this case, the institution has reported the disposition to the appellant.  Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process.  Therefore no relief is provided at the DLR.

   **B.  BASIS FOR THE DECISION:**
California Penal Code Section: 832.7, 832.8
California Code of Regulations, Title 15, Section: 3000, 3001, 3004, 3391
Administrative Bulletin 98/10: PROCESSING OF INMATE/PAROLEE APPEALS, CDC FORMS 602, WHICH ALLEGE STAFF MISCONDUCT

   **C.  ORDER:** No changes or modifications are required by the institution.

DAWSON, P-13296
CASE NO. 0604391
PAGE 2

This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:    Warden, PBSP
        Appeals Coordinator, PBSP

E X H I B I T    " B "

A 2 230y

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location:  Institution/Parole Region    Log No.    Category

1. **PBSP**    1. IA·18·2007·00363    81 10    Failed to provide Treatment

2. ___    2. ___    DAYS State

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.    A1 203   A2 230y

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| MARC DAWSON | P-13296 | Ad-Seg Pending TX | A1-203 |

A. Describe Problem: I am filing this complaint against the Medical Department at PBSP for deliberate Indifference to known medical needs and failure to provide a meaningful and Reasonable medical delivery service. Two major Problems have been on-going and I feel they can no longer be resolved at this Prison. After finally reviewing my medical file, I have found pockets of neglect and indifference in several areas. In the first problem- I was given the wrong medication (Please refer to Log# PBSP-06-01578). That Problem is already on appeal. I am appealing the care given after the initial Error. 2 days after the Error, LVN KirkPatrick Pulled me out and found that

If you need more space, attach one additional sheet.    Continued on Additional Page

B. Action Requested: I'm seeking Damages as to be determined, which is not within the scope of this agency. Please exhaust Remedies as required by the Prison Litigation Reform Act.

Inmate/Parolee Signature: Marc Dawson    #P13296    Date Submitted: 1-8-07

C. INFORMAL LEVEL (Date Received: ___ )

Staff Response: ___

~~BYPASS~~ k

INITIAL APPEALS BRANCH
JUL 25 2007
RECEIVED

Staff Signature: ___    Date Returned to Inmate: ___

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

~~BYPASS~~ k

Signature: ___    Date Submitted: ___

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim    CDC Appeal Number:

1st level Addendum

BN
Rejected
JAN 25 2007

Accepted Level
1st level
FEB 27 2007

1st level
2nd
APR 05 2007

Screened out
JUN 1 3 2007
RTN to 4m

2nd
JUN 28 2007

First Level   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 2.27.07   Due Date: 4-10-07

Interviewed by: *This is a duplicate of past appeals*

*X See document. S Bleisner 5/8/07*

*(First level addendum attached) S Bleisner 5.25.07*

*1st level addendum RN Town*
*5/29/07*

Staff Signature: *S Bleisner*   Title: *RN*   Date Completed: 3/30/07

Division Head Approved:   Returned   APR 0 2 2007

Signature: _____   Title: *DON*   Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

*This is "NOT" identical. This deals with RN Edwards, Dr McLean, And Dr Tran. This does not concern anyone or anything else but these three employees and my charges of neglect in the Medical care they failed to give. This is not a duplicate. Please exhaust Remedies.*

Signature: *Marc Dawson*   Date Submitted: *April 4th 2007*

Second Level   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other ____ 4-5-09 6-28-07   5-8-07 7-27-07

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 4-5-09 6-28-07   Due Date: 5-8-07 7-27-07

☒ See Attached Letter

Signature: *J. Nimitt*   Date Completed: 7-6-07

Warden/Superintendent Signature: *MMC*   Date Returned to Inmate: JUL 1 0 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

DISSATISFIED. THIS 602 HAS NOT BEEN HANDLED WITHIN THE GUIDELINES OF THE TITLE IN ANY LIGHT. TIME RESTRAINTS HAVE BEEN IGNORED. THE ISSUES CONTINUE BLURRED & THE COMMENTS ARE NOT BENEFICIAL TO RESOLVING THESE MATTERS. FOR INSTANCE, IF I HAD SEEN A DOCTOR, THEY WOULD HAVE ORDERED A BLOOD TEST TO DETERMINE WHAT DRUG WAS IN MY SYSTEM AS WAS EVENTUALLY DONE A WEEK LATER WHEN I FINALLY SAW MY PCP. S. BLEISNER CONTINUES TO ERR IN HER STATEMENTS. THE OLD GLASSES WERE PICKED UP.

Signature: *Marc Dawson* P13296   Date Submitted: 7/19/07

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:   ☐ Granted   ☐ P. Granted   ☒ Denied   ☐ Other _____

☒ See Attached Letter   Date: OCT 2 3 2007

CDC 602 (12/87)

N. Describe Problem (continued).

my irises were off and my eyes were, not reacting properly to his light tests. He told me that he was sending me to the infirmary to have my blood drawn in order to find out what was causing the reactions and to give me something to make me sleep. I was seen by RN Edwards who had no idea why I was there. I informed her about the medication mix-up and asked if she would draw blood. She said no. I asked Edwards before leaving and she said it wouldn't be necessary and that I would see a Doctor on Monday. I was told this on Saturday, June 10th, 2006. On Monday, I asked several officers if I was on the doctors line and I was told that the doctor only comes on Tuesdays and Thursdays. On Tuesday, I asked MTA Guidospe if I was on the line and he told me yes. Later in the day, I was informed that I'd been scratched from the list. On Wednesday, I was instructed to give MTA Guidospe a 602 requesting medical attention and I complied. On June 15th, 2006, I saw Dr. Jain and she ordered a blood draw and urinalysis but completely misinterpreted everything I told her and entered false statements that had no medical backing into my file. I became aware of her mistakes when I reviewed my file and wrote a 602 and was seen again on June 22 by Dr. Jain who made somewhat of a correction and entered that into my file on the same date. On July 17th, 2006, during my chronic care visit, I asked about the urinalysis that Dr. Jain had ordered and she informed me that there was blood in my urine. She said she would do a follow-up. Over a month passed and nothing was done until I brought it up again. During this time, I was supposed to have received glasses that would correct the blurriness in my right caused by the overdose, but the glasses were not made right and as of this writing, 6 months later, I still have blurred vision in my right eye and no glasses.

I find problems with RN M. Edwards not drawing blood in order to identify what was in my system so that it could have been counter-acted. I asked her twice - she told me that it wasn't necessary yet the doctor ordered a draw 1 week after the medication error. She should have treated the situation as if an unknown substance (poison continue) had been ingested. After that - I was not allowed to see a doctor because "it wasn't my buildings day". My health problems had to coincide with my buildings day to see a doctor. Even then I had to 602 it just to be seen. Once seen, Dr. Jain completely misinterpreted me and did nothing to aid the eye problem. No new tests have been done on my eye and the glasses are not in my possession.

The second problem began in January of 2004. I began to have lesions form on my tongue. My problem was continually referred to Dr. McLean. Even though she could not determine what the problem was, she would not refer me to a specialist. The problem continued to get worse but no treatment given. Only blood tests that contributed to not explain the problem. This pain is intense and sometimes I can't sit for several days. 602's never get answered until I came to A1. MTA Guidospe having delivered a 602 to the Associate office and the medical department was forced to refer me to an outside specialist in Eureka. Before going to see him, I attempted to make copies of notes taken that described the "cycle" that the lesions would go through only to find these documents missing. Please refer to appeal # PBSP-S-06-02729. I go to the specialist and he orders a treatment but the medical department failed to follow his directions even after being informed that they were not. Please see appeal # 1A-18-2006-00090. When I went back to see the specialist, my lesion cycle was at the back end where they began to lessen. Not having the documentation describing three cycles and being under the impression that the physicians medical department had followed his instructions, he noted that my problem was resolved. This is not so. As I write this 602, I have lesions over half my tongue and the burning is continual. Because the medical department failed to follow his orders, I have been misdiagnosed. After (3) years of fighting to see a specialist, it has been all for naught due to this prisons medical departments failure to give the duty of care that they owe inmates.

Finally, it should be noted that when I've requested copies of my medical file, I've received other inmates records which is documented that I returned. The medical department is continually late on answering appeals. As I write this 602, they have went 30 days past the due date on the second level appeals.

In conclusion, I feel that the medical department is still failing to give meaningful medical services and are indifferent to serious and documented medical concerns. Both of the problems mentioned herein are still ongoing.

- Permanent Appeal Attachment - Do Not Remove -

## FIRST LEVEL APPEAL RESPONSE

**RE:**    PELICAN BAY STATE PRISON
Appeal Log #: IA-18-2007-00363
Inmate Name: DAWSON, P13296

**APPEAL ISSUE:** Inmate requests investigation by outside investigators into the lack of care after an incident on June 10, 2006, when the inmate thought he was given an incorrect medication. Inmate Dawson is now adding to the appeal PBSP-A-06-01578 "the lack of care by RN Edwards, M. McLean and Dr. Jain."

**FINDINGS:** A review of your appeal has been completed. Your appeal with the attachments and your requested action has received careful consideration. S. Bliesner, Supervising Registered Nurse II, was assigned to review your allegations. As was explained in the first appeal of this issue, there was no medical indication for medical care other than the care that was given. On May 8, 2007, I spoke with Inmate Dawson. He was polite but states, "his people" have told him he needs to include everyone in this because later he can not add to his claim. He did not want to go over this all again. Inmate Dawson is still claiming that he has an eye problem; however, when I interviewed him the last time I told him to fill out a sick call complaint and he still has not done this. I gave him the instructions again that if he was having eye problems he needs to put in a sick call slips (7362).

**DECISION:** The Appeal is DENIED.


_S. Bliesner 5-25-07_
S. BLIESNER
Supervising Registered Nurse II


R. ROBINSON
Supervising Registered Nurse III
Director of Nursing

**ADDENDUM TO**
**FIRST LEVEL APPEAL RESPONSE**


**RE:**    PELICAN BAY STATE PRISON
Appeal Log #: IA-18-2007-00363
Inmate Name: DAWSON, P13296


**APPEAL ISSUE:** Inmate requests investigation by outside investigators into the lack of care after an incident on June 10, 2006, when the inmate thought he was given an incorrect medication. Inmate Dawson is now adding to the appeal PBSP-A-06-01578 "the lack of care by RN Edwards, M. McLean and Dr. Jain."

**FINDINGS:** A review of your appeal has been completed. Your appeal with the attachments and your requested action has received careful consideration. S. Bliesner, Supervising Registered Nurse II, was assigned to review your allegations. As was explained in the first appeal of this issue, there was no medical indication for medical care other than the care that was given. On May 8, 2007, I spoke with Inmate Dawson. He was polite but states, "his people" have told him he needs to include everyone in this because later he can not add to his claim. He did not want to go over this all again. Inmate Dawson is still claiming that he has an eye problem; however, when I interviewed him the last time I told him to fill out a sick call complaint and he still has not done this. I gave him the instructions again that if he was having eye problems he needs to put in a sick call slips (7362). On May 23, 2007, I spoke with RN Edwards and she stated that at the time she saw Inmate Dawson there were no clinical indications for a blood test for a suspected "drug overdose."

**DECISION:** The Appeal is DENIED.


_S. Bliesner_ 5-25-07
S. BLIESNER
Supervising Registered Nurse II


R. ROBINSON
Supervising Registered Nurse III
Director of Nursing

# 6 0 2   S U P P L E M E N T A L

## SECTION "F"

NOTE TO APPEALS COORDINATOR:

I WAS RECENTLY TRANS-PACKED AND WITHOUT MY PROPERTY FOR ABOUT TWO
AND A HALF WEEKS. THIS 602 WAS IN MY PROPERTY AND I COULD NOT GAIN
ACCESS TO IT. THAT IS WHY THERE WAS A SLIGHT DELAY IN FILLING OUT
SECTION "F" AND RETURNING IT TO YOUR OFFICE. SECOND, FOR WHATEVER
REASONS, THIS APPEAL GOT AMENDED AT THE FIRST LEVEL AND I NEED TO
REFILL OUT SECTION "F" TO ADDRESS THE ADDENDUM SINCE I HA ALREADY
FILLED IT OUT BEFORE. THANK YOU FOR YOUR TIME ON THESE ISSUES.


**SECTION "F":**

ISSUE #1: MRS. BLIESNER WOULD HAVE HER RESPONSE TO READ THAT I WAS
NOT COOPERATIVE WITH HER BUT THAT IS NOT THE CASE. **SHE** STATED THAT
WE HAD ALREADY GONE OVER EVERYTHING IN THE PAST AND ASKED IF THERE
WAS ANYTHING THAT NEEDED TO BE ADDED AND I SAID "NO". NOT THAT I WAS
NOT WILLING TO GO OVER ANY ISSUES IF SHE NEEDED CLARITY.

ISSUE #2: MRS. BLIESNER HAS BEEN MISINFORMED ABOUT MY EFFORTS TO GET
MY EYES FIXED. I **HAVE** PUT IN SLIPS AND THEY HAVE ALREADY CAME AND
GOTTEN THE OLD GLASSES THAT DID NOT WORK AND TOLD ME THAT I WOULD
BE SCHEDULED FOR ANOTHER CHECK-UP. THAT WAS NOT EVEN AN ISSUE YET
SHE WOULD IMPLY THAT I WAS NOT SEEKING MEDICAL ATTENTION WHEN, IN
FACT, I HAVE ALREADY BEGUN THE PROCESS.

ISSUE #3: RN EDWARDS OFFERS ABSOLUTELY NO MEDICAL BACKING FOR HER
COMMENT ABOUT "NO CLINICAL INDICATION". MY EYES AND VITALS WERE UP
AND DOWN , AND SHE WAS NOTIFIED THAT I HAD BEEN GIVEN THE WRONG
MEDICATION BY MYSELF AND IN FRONT OF THE ESCORTING OFFICERS. THE
MEDICATION MANAGEMENT MANUAL'S GUIDELINES WERE NOT FOLLWED.

**DISSATISFIED WITH THE 1ST LEVEL RESPONSE. PLEASE DO 2ND LEVEL REVIEW.**

/S/ _//ičle Janson_                    DATED: JUNE 14TH., 2007


## PERMANENT APPEAL ATTACHMENT-PLEASE DO NOT REMOVE

SECOND LEVEL APPEAL RESPONSE

RE:   PELICAN BAY STATE PRISON
      Appeal Log: IA-18-2007-00363
      Inmate: DAWSON P13296

Maureen McLean, FNP, Health Care Manager at Pelican Bay State Prison, (PBSP) reviewed this matter. Joseph Kravitz, Correctional Counselor II, conducted the Appeal at the Second Level of Review on July 6, 2007.

**APPEAL ISSUE:** You filed this appeal on January 8, 2007 claiming deliberate indifference by the Pelican Bay State Prison Medical Department. See attached CDC 602 and corresponding documents. As a resolution of this appeal you are seeking damages to be determined which 'is within the scope of this agency'.

**FINDINGS:** A review of your appeal, including staff's efforts to resolve the appeal at the informal level and at the first formal level, together with your responses, has been completed. All submitted documentation and supporting arguments of the appellant have been considered.

I, M. McLean, FNP, Health Care Manager, was assigned to investigate your allegations. J. Kravitz, CC II, reviewed your appeal and responses on July 6, 2007. S. Bleisner SRN II has interviewed you on two separate occasions for issues contained within this appeal. On May 8, 2007 you told S. Bleisner SRN II you were still having problems with your eye. At the interview she instructed you to submit a CDC 7362 request for sick call services. On May 28, 2007 the date she submitted the appeal for review she indicated you had not requested medical services for your eye complaints. On May 23, 2007 S. Bliesner interviewed M. Edwards RN and she stated that at the time she examined you there were no clinical indications for a blood test for a suspected 'drug overdose'. See attached responses. Both interviews and conclusions were reviewed and approved by R. Robinson, Director of Nursing. The issues noted in section (f) of your appeal have been addressed in various other appeals you have filed. The responses provided in the first level review clearly states that based on the clinical judgment of the nurse in the urgent treatment area the treatment provided was appropriate. Pursuant to the California Code of Regulations, Title 15, Section (CCR) 3354, it is inappropriate for the appellant to demand his own health care intervention. This is the responsibility of your primary care provider, who will determine those interventions that are medically necessary. Based on the aforementioned the second level of review concurs with the finding provided in the first level of review. This concludes the review of your appeal at the second level.

**DECISION:** The Appeal is denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

_____  7-6-07          _____  7/9/07
JOSEPH KRAVITZ        Date         MAUREEN MCLEAN, FNP    Date
Correctional Counselor II          Health Care Manager

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

## DIRECTOR'S LEVEL APPEAL DECISION

Date:    OCT 2 3 2007

In re:    Marc Dawson, P13296
Pelican Bay State Prison
P.O. Box 7000
Crescent City, CA 95531-7000

IAB Case No.: 0702966          Local Log No.: PBSP-07-00363

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner V. O'Shaughnessy. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that he did not receive appropriate care after an incident on June 10, 2006. The appellant claims he was given an incorrect medication. The appellant is claiming deliberate indifference by the Pelican Bay State Prison medical department. The appellant is requesting damages to be determined which is within the scope of this agency. He requests to exhaust his remedies as required by the Prison Litigation Reform Act.

**II    SECOND LEVEL'S DECISION:** The reviewer found that M. McLean, Family Nurse Practitioner, Health Care Manager, was assigned to investigate the appellant's allegations. J. Kravitz, Correctional Counselor II, reviewed the appeal and responses on July 6, 2007. S. Bleisner, Supervising Registered Nurse II has interviewed the appellant on two separate occasions regarding the issues contained within this appeal. On May 8, 2007, the appellant told S. Bleisner, SRNII he was still having problems with his eye. At the interview, she instructed him to submit a CDC 7362 request for sick call services. On May 28, 2007, the date SRNII Bleisner submitted the appeal for review, she indicated the appellant had not requested medical services for his eye complaints. On May 23, 2007, SRNII Bliesner interviewed Registered Nurse Edwards who stated that at the time she examined the appellant there were no clinical indications for a blood test for a suspected "drug overdose". Both interviews and conclusions were reviewed and approved by Director of Nursing, Robinson. The issues noted in section (f) of the appellant's appeal have been addressed in various other appeals the appellant has filed. The responses provided in the first level review clearly states that based on the clinical judgment of the nurse in the urgent treatment area the treatment provided was appropriate. It is inappropriate for the appellant to demand his own health care intervention. This is the responsibility of the appellant's primary care provider, who will determine those interventions that are medically necessary. The appeal complaint was denied at the Second Level of Review (SLR).

**III    DIRECTOR'S LEVEL DECISION:** Appeal is denied.

   **A.    FINDINGS:** The Director's Level of Review reviewed the appellant's appeal complaint, the SLR response and contacted institution medical staff for further information. On October 18, 2007, J. Kravitz, Correctional Counselor II, provided a copy of a First Level Response (FLR) to a different Log # PBSP-A-06-02533 which addresses the appellant's allegation regarding lack of care and treatment after a June 2006 incident. The FLR was responding to the appellant's allegation that he was given the wrong medication and did not receive appropriate care afterwards. After drinking a medication that tasted different during medication administration, the appellant requested to be taken to the urgent treatment area (UTA) on June 10, 2006 with complaints of grogginess, blurred vision and not feeling right. At the UTA the appellant's vital signs were stable. He did have a finding of right pupil 4 mm and his left 3. This minimal difference is not diagnostic by itself. He was sent back to his cell and ordered bed rest and to drink a lot of fluids. There is no documentation of the appellant notifying staff of a recurring problem. The appellant was seen on June 15, 2006 and at that time complained that his eyes were still twitching. The Primary Care Physician (PCP) ordered a urine and blood toxicity screen and to be seen on follow-up. On June 22, 2006, the findings were right eye slightly larger than the left. The toxic screen indicated Haldol and Artane. Since the

MARC DAWSON, P13296
CASE NO. 0702966
PAGE 2

sample was taken one week later this provided little diagnostic value. One dose of medication either Haldol or Artane would not still be in the inmate's system. The appellant stated that he spit out the medication when he thought it was the incorrect one being administered. This could mean that: 1) the lab work was in error; 2) the inmate took someone else's medications, or 3) that the dose of medication that was taken and spit out, one week later raised the blood level that was found in the sample taken on June 15, 2006. There is no way to determine the reason for the laboratory results. None of the vitals in the UTA or during his follow-up were abnormal. This issue was thoroughly addressed in Log # PBSP-A-06-02533.

The appellant's issues have been appropriately reviewed, investigated by the Pelican Bay State Prison (PBSP) medical staff and responded to in the current appeal SLR and during previous responses to this same issue under appeal log number PBSP-A06-02533. The appellant is reminded at the DLR that only facility-employed health care staff, contractors paid to perform health services for the facility, or persons employed as health care consultants shall be permitted within the scope of their licensure, to diagnose illness or, prescribe medication and heath care treatment for inmates. No other personnel or inmates may do so.

No modification to the SLR is warranted.

**B.  BASIS FOR THE DECISION:**
California Code of Regulations, Title 15, Section; 3350, 3354

**C.  ORDER:** No changes or modifications are required by the Institution.

This decision exhausts the administrative remedy available to the appellant within CDCR. If dissatisfied, the appellant may forward this issue to the California Victims Compensation and Government Claims Board, (formerly known as the State Board of Control), Government Claims Unit, P.O. Box 3035, Sacramento, CA 95812-3035, for further review.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, PBSP
        Health Care Manager, PBSP
        Appeals Coordinator, PBSP
        Medical Appeals Analyst, PBSP

E X H I B I T    " C "

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: Institution/Parole Region    *IPBSP!*    Log No.    Category    *8/26/7R*
1. _____    1. *A06-02533*    *STAFF COMPLAINT*
2. _____    2. _____    *INVESTIGATION*    *MISCONDUCT*

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.    *A2-230*

**STAFF COMPLAINT**

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| *MARC DAWSON* | *P13296* | *AD-SEG* | *AFR030* |

A. Describe Problem: *This is a staff complaint against M. Morgan, Senior Psychiatric Technician, M. McLean, FNP/HCM, and A. Thacker, CHSA II, for violations of Due Process, violations of State Law and regulations, and violations of Employee Conduct Regulations. The "Rights and Responsibility Statement is not available for me to attach to this 602. On 6-27-06, I filed a staff complaint against S. Latham for medical negligence. It was assigned to the Health Care Manager, M. McLean, for a 2nd Level Review. This complaint revolves around the review and the staff involved in the review. My allegations against these Medical Staff members are as follows on the additional page attached to this 602.*

If you need more space, attach one additional sheet.    *(Continued On Additional Page)*

B. Action Requested: *1) An investigation conducted by the prisons Internal Affairs office, and done by an investigator that is not part of the medical Department. 2) Administrative actions within the scope of this complaint.*

Inmate/Parolee Signature: *Marc Dawson P13296*    Date Submitted: *10-8-06*

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

**BYPASS**

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

**BYPASS**

Signature: _____    Date Submitted: _____
Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim    CDC Appeal Number: _____

*TO CDW    2nd    HCM    2nd    OCT 10 2006    OCT 16 2006    JUN 28 2007*

First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

*see attached*    **BYPASS** *error*

Staff Signature: _____    Title: _____    Date Completed: _____
Division Head Approved: _____    Returned
Signature: _____    Title: _____    Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

**BYPASS** *error*

Signature: ↓ *This should have been signed at 1st level* _____    Date Submitted: _____
*Bypass should have been in error - RWHBZER*

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 10-16-06 _____ Due Date: 11-30-06

☐ See Attached Letter

Signature: S. Blumen _____    Date Completed: 12-11-06

Warden/Superintendent Signature: X _____    Date Returned to Inmate: FEB 2 3 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

*I am dissatisfied. The facts surrounding the incident are still being misinterpreted. This appeal is against the reviewers and not the medication mistake. The reviewer in question presented false & defamatory statements on her appeal response (MCSP Appeal # PBSP A-06-01578). Furthermore - I have not had an impartial review on this appeal as the people under MCSW handled this 602. They should not have as they will not go against their boss! Please investigate this using an outside dept.!*

Signature: Marc Dawson P17296 _____    Date Submitted: _____

For the Director's Review, submit all documents to:    Director of Corrections
                                                         P.O. Box 942883
                                                         Sacramento, CA 94283-0001
                                                         Attn: Chief, Inmate Appeals

*SAME SUBMISSION OF DISSATISFACTION*
*X Marc Dawson 7/18/07*

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____
☒ See Attached Letter

Date: DEC 2 0 2007

CDC 602 (12/87)

0702644

STATE OF CALIFORNIA

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

Location: Institution/Parole Region    **PBSP**

Log No.   1. A06-02533

Category

1. _____

2. _____

1. _____

2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME    MARC DAWSON

NUMBER    P13296

ASSIGNMENT    AD-SEG

UNIT/ROOM NUMBER    N2-230

INMATE APPEALS BRANCH   RECEIVED SEP 14 2007

A. Describe Problem: _____

See Page 1
See A

If you need more space, attach one additional sheet.

B. Action Requested: _____

See page 1
See B

Inmate/Parolee Signature: _____    Date Submitted: _____

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Bypass

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

Bypass

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:



First Level    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_see attached_

_____

_____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____
Division Head Approved:                                                    Returned
Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_see page 1_
_sec H_

Signature: _____ Date Submitted: _____

Second Level    ☐ Granted    ☐ P. Granted    ☒ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _6-28-07_ Due Date: _7-27-07_
☒ See Attached Letter

Signature: _____ cc ot _____ Date Completed: _2-12-07_
Warden/Superintendent Signature: _Mureen McLehan_ Date Returned to Inmate: JUL 17 2007

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

CDC 602 (12/87)                                          Date: _____

Case 5:08-cv-00741-JF   Document 3   Filed 02/06/2008   Page 47 of 79

IN REGARDS TO M. MORGAN: HE IS A CLOSE ASSOCIATE TO S. LATHAM. THEY HAVE BEEN SEEN SITTING TOGETHER AROUND A DESK WITH OFFICERS, CHIT-CHATTING, LAUGHING, etc., etc., while on ESCORT TO GROUP THERAPY. DUE TO THIS CLOSE WORKING RELATIONSHIP, IT IS BELIEVED THAT M. MORGAN INTENTIONALLY FAILED TO ADDRESS ANY OF THE '6' CLAIMS OF NEGLIGENCE THAT I ALLEGED AGAINST S. LATHAM. INSTEAD, M. MORGAN WORKED IN UNISON WITH THE OTHER REVIEWERS TO INTENTIONALLY DELIVER INACCURATE INFORMATION WHICH VIOLATES SECTION 3413 (A), (2) OF THE TITLE 15. M. MORGANS ACTIONS AND OMISSIONS WERE IRRESPONSIBLE AND UNETHICAL, VIOLATING SECTION 3391 (G) OF THE TITLE 15. M. MORGANS ACTIONS HINDERED MY ABILITY TO HAVE A FAIR, IMPARTIAL, AND THOROUGH REVIEW AS IS REGULATED BY THE TITLE 15 AND HAS VIOLATED MY PROCEDURAL DUE PROCESS RIGHTS AND VIOLATES SECTION 3413 (A)(4) of the TITLE 15.

IN REGARDS TO M. McLEAN: SHE IS THE HCM AND WAS ASSIGNED TO INVESTIGATE MY ALLE-GATIONS ON NEGLECT AGAINST S. LATHAM. THE HCM USED THE INTENTIONALLY INACCURATE IN-FORMATION FROM M. MORGAN AND FORMULATED A DETERMINATION OF EVENTS THAT WERE NOT SUPPORTED BY FACT. AS THE HCM, M. McLEAN SHOULD BE AWARE MEDICAL PROCEDURES AND SHOULD HAVE NOTICED THE OBVIOUSLY FAULTY INVESTIGATION DONE BY M. MORGAN. THE HCM FAILED TO INVESTIGATE ANY OF MY '6' ALLEGATIONS OF NEGLIGENCE AS CAN CLEARLY BE SEEN IN THE ATTACHED 2ND LEVEL REVIEW. THE HCM IS RESPONSIBLE FOR PROCEDURES THAT ARE USED BY MEDICAL STAFF UNDER HER AUTHORITY. THE HCM IS AWARE OF PROCEDURES SET FORTH IN THE MEDICATION MANAGEMENT MANUAL. S. LATHAM FAILED TO FOLLOW THESE PROCEDURES AND THE HCM FAILED TO ADDRESS THESE OBVIOUS FAILURES. M. McLEAN WOULD NOT ADDRESS MY '6' ALLEGATIONS OF NEGLIGENCE BECAUSE IT SHOWED A LACK OF OWED DUTY OF CARE ON THE PART OF S. LATHAM AND THAT IS A DIRECT REFLECTION UPON THE HCM. IT WOULD ALSO BE ANOTHER INSTANCE OF INADEQUACY BY A MEDICAL DEPARTMENT ALREADY UNDER SCRUTINY. THE HCM'S ACTIONS WERE IRRESPONSIBLE AND UNETHICAL AND VIOLATED SECTION 3413 (A)(2) of the TITLE 15 WHEN SHE ENTERED INTENTIONALLY FALSE AND IN-ACCURATE INFORMATION INTO A STATE DOCUMENT. THE HCM STATED THAT S. LATHAM DID NOTIFY A DOCTOR AND RECORD THE INCIDENT ON 6/9/06. THIS IS MEANT TO BE MISLEADING. THE INCIDENT HAPPENED ON 6-8-06 AND OBSERVATION AND MONITORING SHOULD HAVE BEGUN ON THAT DATE. I HAVE MY MEDICAL RECORDS ALONG WITH A SIGNED 6A-22 FROM MEDICAL RECORDS THAT CLEARLY SHOW NO ENTRIES WERE MADE ON 6/8/06. THE HCM'S STATEMENT IS FALSE. THE HCM STATES THAT I WAS HOUSED ON THE BOTTOM TIER AND THAT THE WAY THE MEDICATION TRAYS ARE SET UP, THE LIQUID ANTANE WAS NOT ON THE CART. THIS IS ANOTHER FALSE STATEMENT. I WAS NOT, AND NEVER HAVE BEEN, HOUSED ON THE BOTTOM TIER IN ASU-1. I WAS HOUSED IN A1-203, THE VERY END OF THE MED PASS. AT THE TIME OF THE INCIDENT. THE LIQUID MEDS WERE, IN FACT, ON THE CART. AN IMPORTANT FACT WAS OMITTED BY THE HCM. S. LATHAM PRE-POURS THE LIQUID MEDS BEFORE SHE DOES THE MED PASS. CUPS OF CLEAR LIQUID COULD BE MISTAKEN AND ISSUED. THE HCM FURTHER STATES THAT THE BOTTLES OF ANTANE AND NEURONTIN ARE HARD TO CONFUSE. THIS IS FALSE. I HAVE SPOKE WITH MEDICAL STAFF AND THE BOTTLES, IF OUT AND READY TO POUR, CAN BE MISTAKEN FOR ONE ANOTHER. THE HCM MAKES REFERENCE TO MY TEST RESULTS THAT SHOWED ALCOHOL IN MY SYSTEM. THIS IS MISLEADING. SHE OMITS THE FACT THAT IT WAS A MINUTE TRACE (0.15) AND COULD HAVE BEEN AN ERROR. I HAVE SPOKE WITH MEDICAL STAFF AND HAVE BEEN TOLD THAT CHEMICAL PROPERTIES FROM OTHER MEDS. OR THE COMBINATION OF MEDS, CAN GIVE MINUTE FALSE POSITIVES. THIS FACT WAS OMITTED. THE DRUG IN MY SYSTEM THAT WAS IN QUESTION WAS ANTANE, WHICH SHOWED A 2.0 LEVEL 7 DAYS AFTER INGESTION. THE HCM STATES THAT I WAS PROPERLY MONITORED THROUGH-OUT THE TIME OF THE INCIDENT. THIS IS A COMPLETE FALSEHOOD. MY VITALS WERE TAKE TWICE ON SUNDAY EVENING. ONCE BY LVN KIRKPATRICK WHO NOTICED THAT I WAS MESSED UP AND THEN BY RN EDWARDS AT THE CTC, 20 MINUTES LATER. IN THE 7 DAYS THAT IT TOOK TO FINALLY SEE A DOCTOR. I WAS NEVER ON A REGULAR MONITORING/OBSERVATION PERIOD. THE HCM HAS FABRICATED THAT STATEMENT BECAUSE PROCEDURES STATE THAT I SHOULD HAVE BEEN MONITORED REGULARLY. I HAVE RECORDS TO PROVE THIS FALSEHOOD. THE HCM STATES THAT OTHER INMATES IN THE HCM TOOK ALL FORM HALDOL AND ANTANE. SHE FAILS TO MENTION THAT NONE WERE HOUSED IN MY SECTION TO BARTER WITH AS SHE INSINUATES. THE HCM ATTEMPTS TO DEFAME MY CHARACTER BY STATING THAT "INMATES HAVE TRADES AND BARTERED MEDICATIONS IN ASU-1 IN THE PAST". WHAT DOES THAT HAVE TO DO WITH ME? THE HCM HAD NO FACTUAL JUSTIFICATION TO INSINUATE THAT AND ENTER THIS DEFAMATORY COMMENT

Additional Page. Permanent Appeal Attachment. Cont. on Reverse.

INTO THE REVIEW. I HAVE BEEN 100% COMPLIANT WITH ALL ASPECTS OF THE MENTAL HEALTH PROGRAM FOR OVER 5 YRS. I HAVE NEVER BEEN ACCUSED OF BARTERING FOR OR TAKING ANY MEDS THAT WERE NOT MINE. IN FACT, IF MY DOC-TORS AND CLINICIANS ARE CONSULTED, IT WILL BE LEARNED THAT I AM ADAMENTLY AGAINST DRUGS AND ONLY TAKE A MINIMAL AMOUNT TO STABILIZE MY BI-POLARISM. I HAVE NEVER HAD ONE SINGLE DIRTY DRUG TEST OR DRUG CONVICTION IN MY LIFE! FOR HER TO INSINUATE THAT IS UNJUSTIFIED AND AN INSULT. HALDOL ISN'T EVEN A DRUG NORMALLY WATCHED FOR MISUSE OR BARTER. THE MTA'S ARE THE ONES WHO ARE RESPONSIBLE FOR ENSURING MEDS ARE TOOK PROPERLY. HER COMMENTS CAST A SHADOW OF DOUBT THAT THEY ARE PERFORMING THIER JOBS RIGHT! THE HCM'S ACTIONS AND FALSEHOODS STOPPED ME FROM GETTING A FAIR REVIEW AND VIOLATED MY DUE PROCESS RIGHTS. THE HCM DEFAMED MY CHARACTER AND ENTERED PROVABLE FALSEHOODS INTO A STATE DOCUMENT.

IN REGARDS TO A. THACKER: THIS PERSON IS A CORRECTIONAL HEALTH SERVICE AD-MINSTRATOR. THE CHSA II SHOULD BE AWARE OF HEALTH CARE PROCEDURES AND OTHER DEPARTMENTAL POLICIES. IN CONDUCTING THE 2ND LEVEL REVIEW, A. THACKER SHOULD HAVE EVALUATED THE SPT AND HCM'S REVIEWS AND NOTICED THE INCONSISTANCIES AND THIER LACK OF ADDRESSING THE "6" ALLEGATIONS OF NEGLECT. THE CHSA, INSTEAD, SIGNED OFF ON THE 602, DETERMINING THAT THE ALLEGATIONS WERE NOT SUSTAINED. MY QUESTION IS SIMPLE. HOW COULD THE CHSA II MAKE A DETERMINATION ON MY ALLEGATIONS WHEN THEY WERE NEVER ADDRESSED? IN AGREEING WITH THE SPT AND HCM'S ACTIONS, A. THACKER VIOLATED MY DUE PROCESS RIGHTS TO A FAIR AND ADEQUATE REVIEW.

IN CONCLUSION, THE THREE PARTICIPATED IN unethical AND UNPROFESSIONAL CON-DUCT THAT WAS INCOMPATIBLE AND INCONSISTENT WITH EMPLOYMENT BY THE CDCR. THEY HAVE VIOLATED THE RIGHTS OF MY PERSON BY VIOLATING STATE AND FEDERAL SAFEGUARDS IN REGARDS TO DUE PROCESS. THEY SHOWED A TOTAL DISREGARD TO THE PROCEDURES AND REGULATIONS SET FORTH IN THE TITLE 15 BY BEING A MONTH LATE IN THIER RESPONSE. THIER ACTIONS HAVE DISCREDITED THE CDCR, A DEPARTMENT WHICH IS TRYING TO IMPROVE AND FIX THE MEDICAL DEPARTMENTS PROBLEMS OF INADEQUACY. THESE 3 STAFF MEMBERS HAVE CONSPIRED TO INTENTIONALLY MISLEAD AN INVESTIGATION OF A LOWER MEDICAL STAFF MEMBER.

PLEASE DO NOT ALLOW THE ACTIONS OF THESE MEDICAL STAFF PERSONNEL TO GO unchecked OR UNANSWERED FOR. THIS IS AN OPPORTUNITY FOR THIS PERSON TO HANDLE THIER AFFAIRS WITHOUT OUTSIDE INVOLVEMENT.

///
///
///

END OF COMPLAINT


— Permanent Appeal Attachment —


I have money on my books and am willing to pay the cost of a polygraph test in regards to anything involving S. Catham, M. Morgan, M. McLean, A. Thacker, or any events described herein.

Marc Dansler #P-13296

— Please Don't Remove —

## FIRST LEVEL APPEAL RESPONSE

DATE: December 7, 2006

APPEAL LOG NUMBER: PBSP-A-06-02533

INMATE: DAWSON
CDC NUMBER: P13296

APPEAL DECISION:

APPEAL ISSUE:

FINDINGS:    Inmate Dawson (Dawson) was interviewed in Administrative Segregation.
Dawson states that his concerns over the investigation of his appeal were: 1) The appeal was
partially granted because the Administrative action of the requested investigation did occur;
however, Dawson wants an outside investigation from staff not working at Pelican Bay State
Prison; 2) that vital signs were not taken at the time Dawson reported his condition to medical
staff, and 3) the decision that he misused someone else's drugs was "defamatory."

Dawson states that on the evening of June 8, 2006, during the evening medication pass, PT
Latham gave the medication cup to Dawson, he took the medication cup, and poured the liquid
medication in his mouth and immediately spit it out. Inmate Dawson said the medication tasted
different. PT Latham told the inmate it was the correct medication; however, it was the last of
the bottle and it may have tasted different. Inmate Dawson then stated that PT Latham came
back with another medication cup with a liquid medication and stated it was liquid Neurontin.
Inmate Dawson took the medication. Inmate Dawson said that his cellmate told him that he
(Dawson) had fallen asleep within 30 minutes and mumbled incoherently during the night.
Inmate Dawson then stated that in the morning he was still feeling "foggy" and had blurred
vision especially in the left eye.

Inmate Dawson was taken to his regular group at approximately 9:00. While sitting in the
holding cage he began having "muscle spasm and not feeling well." Officers escorted inmate
Dawson to the standing holding cell. PT Latham talked with inmate Dawson and told him he
was given the right medication. Dawson said that Latham told him that it was all in his head and
that she had also told his cellmate that it was all in his head. He was seen at the Ad-Seg PCP line
so he was taken in and saw Dr. Hutchison. Dr. Hutchison prescribed Benadryl and bed rest.
Inmate Dawson said he continued to feel not right and slept a lot. During the Saturday June 10,
2006 medication pass inmate Dawson told LVN Kirkpatrick about the continuing problems.
Kirkpatrick asked inmate Dawson if he would allow a blood draw. Inmate Dawson's response
was 'definitely.' Inmate Dawson was taken to the urgent treatment area (UTA). At the UTA,
Dawson's vital signs were stable. Dawson did have a finding of right pupil 4mm and his left 3.
This minimal difference is not diagnostic by itself. At the time, he was ordered sent back to his

FIRST LEVEL APPEAL RESPONSE
I/M Dawson, P13296
Log No.: PBSP-A-06-02533
Page 2

cell. He was ordered bestress and to drink a lot of fluids. There is no documentation of Dawson notifying staff of a recurring problem.

Dawson was seen on June 15, 2006, and at that time complained that his eyes were still twitching. The PCP ordered a urine and blood toxicity screen and to be seen on follow-up. Inmate Dawson was seen on June 22, 2006, and the findings were right eye slightly larger than left. "It seems that discrepancy on last exam was not intentional and inmate does have a problem with the right eye in the past and gets twitching because of that." The toxicology screen was not complete. Dawson was scheduled to return on June 29, 2006, which was rescheduled. When Dawson came into the clinic, he was complaining of tongue pain not related to the incident of June 8, 2006, and has not brought up the eye issues since.

The toxic screen results were as follows:

HALOPERIDOL (HALDOL) <0.5 ng/mL
TRIHEXYPHENIDYL (ARTANE) <2.0L    5.0-40.0 ng/mL

Since the sample was taken one week later this provides little diagnostic value. One dose of medication either Haldol or Artane would not still be in the inmate's system. The results were not rechecked. Inmate Dawson said he spit out the medication. Dawson stated to this reviewer that he thought it might have been a reaction between the medication he was given in error and the Neurontin. Dawson stated his proof was the difference in his eyes and his profound sleep. The minimal difference in the width of his pupils is not diagnostic as many people have "normal" differences in pupil width. There was a small amount of Haldol and Artane in the lab findings. This could mean that, 1) the lab work was in error; 2) the inmate tool someone else's medications, or 3) that the dose of medication that was taken and spit out one week later raised the blood level that was founding the sample taken on June 15, 2006.

DETERMINATION OF ISSUE:

A thorough review of the allegation presented in this complaint has been completed. Based on this review the action requested to resolve this appeal is EXONERATED. There is nothing that an outside review is going to find that would provide an answer to the problem. There is no way to determine the reason for the lab results. The psychiatric Technician should have taken vitals at the time of the incident; however, she felt getting him to be seen by the Psychiatrist available was the best thing to help resolve the issue. This reviewer instructed the PT that a set of vitals should have been taken so there was a baseline. None of the vitals in the UTA or during his follow-up were abnormal. This lack of vital signs had no impact on the care of the inmate; however, taking them might have made the inmate feel like the PT was concerned about his care. The statement that the inmate may have taken the medication issued to someone else is not defamatory, rather it is a fact of life in prison that inmates taken medication other than their prescribed medication. The fact is that toxicology specimens taken one week later leave too many variables to make an educated decision on how and when the inmate obtained Artane and Haldol in his system.

FIRST LEVEL APPEAL RESPONSE
I/M Dawson, P13296
Log No.: PBSP-A-06-02533
Page 3


S. BLIESNER
Supervising Registered Nurse II


R. ROBINSON
Supervising Registered Nurse III
Director of Nursing


APPROVED/DISAPPROVED

SECOND LEVEL APPEAL RESPONSE



ATTACHMENT B

RE:    PELICAN BAY STATE PRISON
       Appeal Log A-06-01578
       Inmate: Dawson, #P-13296

This matter was reviewed by MAUREEN MCLEAN, FNP, Health Care Manager at Pelican Bay State Prison (PBSP). A. Thacker, CHSA II, conducted the Appeal at the Second Level of Review on August 21, 2006.

**APPEAL ISSUE:** You state that this is the second filing of this 602 alleging staff negligence on the part of the Psych Tech/RN S. Latham. You claim that the first 602 was rejected because of length. You allege that S. Latham was negligent in her required duties that may have caused permanent damage and your complaint is as follows: On June 8, 2006, S. Latham was working a double shift and was passing out the PM meds in A-1, when she gave you a cup of liquid medication measuring 20 cc's. You state that you drank it down and immediately informed her that the liquid medication she just gave you was "not" your normal medication. You state that you have been taking liquid Neurontin for a very long time and know its' taste, but LPT Latham insisted that it was Neurontin and you insisted that it was not, so LPT Latham left and came back in approximately 15 minutes with another cup holding 20 cc's of liquid medication. You state that she told you that she checked the bottle and that the consistency was different from the bottle she used first compared to that of the second bottle. You state that you asked what the first bottle was and she didn't know and she instructed you to take the second cup of medication, which you complied and you don't recall what happened later that evening, but you claim that your cellmate (M. Stone, #T-47168) told you that you fell asleep within 30 minutes after taking the meds and this is not normal for you to fall asleep so early. You state that your cellmate also stated that you were mumbling incoherently and you state that you are not able to recall early Friday morning, but at 9:00 a.m., you were taken to group therapy and placed in a "sit down" holding cell and was feeling "foggy" in thought, blurred vision (especially in the left eye), tense muscles, a warm flushed feeling under your eyes, and had the sensation of your head being pushed down. You state that within a short period of time in the holding cell, you began to have severe muscle spasms and not feeling well, so you notified the RN, "Vic", who, in turn, notified S. Latham and you were escorted to the medical office in the A-1 rotunda and S. Latham had C/O Dixon place you in the stand-up holding cell. At this time, you state that S. Latham asked you what your problem was and you told her that you were not feeling right since the medication mix-up on the night before and you also explained how you were feeling and after hearing your explanation, S. Latham told you that "it was all in your head", so you asked her to take your vitals to prove that you were having problems and she said it wasn't necessary. You state that Dr. Hutchinson came in and you explained everything to him and Dr. Hutchinson asked S. Latham what was in the first bottle and she said that she didn't know, so he asked where the bottle was and she told him that she had poured it out the night before and had discarded the bottle. You claim that Dr. Hutchinson then prescribed Benadryl and told you to try to sleep it off and it should be noted that your cellmate also saw S. Latham and told her that you were all messed up and that he knew this because they have lived together almost a year, but she told him that it was "all in his head" as well, something of which she had no reason to tell another inmate that was reporting a medical incident. You claim you slept a lot from Friday through Saturday and your cellmate told you that you were in the fetal position and making sounds while asleep. You state that by Saturday AM medication pass, you couldn't stand it anymore and tried to ask Psych Tech Ian Kirkpatrick what was wrong with you, and Psych Tech Kirkpatrick was concerned with your speech and immediately pulled you out and took your vitals. You informed Psych Tech Kirkpatrick about the problem on Thursday night and Psych Tech Kirkpatrick was the first person to check your vitals and he noted muscle tenseness and spasms and found your pupils were different sizes and each reacted differently to light. You claim that Psych Tech Kirkpatrick even showed the 2 escorting officers (Hutchinson and Rutlege) and he asked if you would let them draw blood at the CTC to find out what was in you and you told him "definitely", so he sent you to the CTC and RN Edwards noted the problem with your eyes and muscles spasms and she stated in front of the 2 escorting officers that there was nothing documented concerning the possibility of a medication mix-up, so you had to literally interrupt her while she was on the phone to get it across to her that you were given the wrong medication, to which she stated in front of the escorting officers and the CTC Rover that the unknown liquid should have been identified and no other medication would have been given because they may not have been chemically compatible, so she told you to take some more Benadryl and drink a lot of water and get more sleep, so you asked about the blood test and she stated it was too late for one and she told you that you were on the doctor's line for Monday. You state that since that time, all of the symptoms have stopped with the exception of the blurred vision in your left eye and you have seen the Optometrist who has ordered glasses to be made to try and get rid of the blurriness. You claim that you had absolutely no blurring in this eye before this incident happened and since the incident, you have spoken to the medical staff and have found out that S. Latham did not follow medical procedures that someone with her training should have and you feel that she acted negligently and unprofessionally for the following reasons: 1) she issued you 20 cc's or

almost ¾ of a fluid ounce of unidentified medication that she admitted to not knowing what it was and instructed you to take an additional 20 cc's of liquid Neurontin without regard to chemical compatibility; 2) she did not document this in a manner that would notify the next shift or anyone thereafter that there may be a problem; 3) she did not begin "observation" that is normally done on inmates who have taken unknown substances; 4) she never took your vitals or checked you out even when requesting it on the Friday visit; 5) she verbally informed you and another inmate that the problems you were having were "all in his head"; and 6) she poured out the liquid and disposed of the bottle (allegedly) without having the unknown liquid identified. You personally believe that based on your symptoms and her actions, S. Latham gave you the wrong medication in a large amount and then she found out and tried to cover it up by not taking your vitals and not placing you on any type of observation, and the fact that she told the doctor that she had poured out the liquid and disposed of the bottle without identifying the liquid show a problem in itself, so you are alleging misconduct on the staff member and negligence that may have permanently damaged your left eye, because you have to completely cover your left eye to write this small writing and she has caused that. You are requesting administrative actions be taken against this RN and you are requesting a formal investigation that will examine her actions. You want them to exhaust your state remedies so that you may seek damages on a medical negligence tort claim. You note that no Right and Responsibility statement was available to you, but you understand the statement as described in 3391 (d) and agree to it in all ways. You further notes that the original appeal was filed on 6/13/06, well within the time limits set forth in Title 15 and on 6/16/06, the Appeals Coordinator rejected the original appeal because he did not have the authority to allow you more than one additional paper, so you have cut down on the verbage and written very small in order to bring this down to one additional page. You state that on 6/27/06, one day after receiving the rejection slip, you have immediately rewritten and resubmitted this "Staff Complaint" against this medical staff member. A review of your appeal was completed. Your appeal with the attachments and your requested action received careful consideration. M. Morgan, Senior Psychiatric Technician, was assigned to review the appeal. He interviewed you at the cell front of ASU A-1 203 on August 10, 2006. You stated that Psychiatric Technician Sherri Latham administered two (2) doses of medication and you reported that the second dose was his prescription for Neurontin. You stated this happened on the 3rd watch on June 8, 2006 and after taking the two doses of medication, you reported going to sleep and the next morning on June 9, 2006, you reported "feeling foggy" and had pressure in your head with "blurred vision". Dr. Hutchinson prescribed Benadryl and bed rest. You stated that the content of his 602-appeal is correct and you signed the CDCR form 1858 and completed the Advisement of Rights form. Psychiatric Technician Sherri Latham was interviewed by M. Morgan on August 10, 2006. Since adequate documentation was found in MPIMS, it was felt that no further information was needed from additional witnesses. A thorough review of the allegation presented in this completed was completed. Based on this review, the action requested to resolve this appeal was DENIED. Additionally the following determination has been made that your allegations of staff misconduct are as follows: NOT SUSTAINED. Ms. Latham recorded your symptoms and notified the unit physician. When you made your symptoms known to staff on 6/9/06, you were treated and monitored as required. This is also documented in MPIMS notes from 6/9/06 by Psych Tech Latham and Dr. Hutchinson. Ms. Latham also noted the episode of the night before in MPIMS. Your follow-up care was provided in a timely manner per the notes dated 6/10/06 from M. Edwards, RN, and MPIMS notes dated 6/15/06 from Dr. Jain. A lab test drawn on 6/16/06 indicates you were positive for Haldol and Artane. The ASU 1 does not have any liquid Haldol on the medication cart. At the time of the episode, one inmate had an order for liquid Artane. Inmate Dawson was housed on the bottom tier and the way the medications are passed is two (2) trays stacked on top of each other. The bottom tier is passed first and the second tier is last. This means the liquid Artane was not on the medication cart when Inmate Dawson received his medication. At the time of the episode, inmates on ASU 1 were receiving Haldol and Artane in pill form. Inmate's on ASU 1 have traded and bartered medication in the past. The Neurontin is stored in the refrigerator and Artane is stored on top of the medication cart. Therefore it is hard to confuse the two medications as one is warm and the other is cold. However, there is no preponderance of evidence either way, in which you came to test positive for Haldol and Artane. In the event staff misconduct is sustained, the institution's Administration will take the appropriate course of action. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public, or the inmate population and will not be released to the inmate. Although the inmate has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. The conclusion of the Reviewer is that the appeal was DENIED, since the requested actions are Administrative in nature and beyond the scope of the appeal process. The reviewer made a conclusion as to the allegations of misconduct, that they were NOT SUSTAINED. The First Level Review constituted a Fact-Finding Inquiry as requested by the Chief Deputy Warden. Your appeal was then moved to the second level of review on 7/19/06.

**FINDINGS:** A review of your appeal has been completed. Your appeal with the attachments and your requested action has received careful consideration. I, M. McLean, FNP, Health Care Manager, was assigned to investigate your allegations. A. Thacker, CHSA II, reviewed your medical file and responses on August 21, 2006. The Fact-Finding Review conducted by the First Level Reviewer was complete and you received adequate and appropriate care and treatment for

the condition and symptoms described. The administrative actions requested were denied, but since an appeal inquiry did take place, that requested action is determined to be granted.

**DECISION:** The Appeal is Partially Granted.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

_____  _8/21/06__          _____  9/21/06
Acel K. Thacker        Date                 M. McLean, FNP        Date
Correctional Health Services Administrator II   Health Care Manager

## SECOND LEVEL APPEAL RESPONSE

RE:     PELICAN BAY STATE PRISON
        Appeal Log: PBSP-A06-02533
        Inmate: DAWSON P13296

Maureen McLean, FNP, Health Care Manager at Pelican Bay State Prison, (PBSP) reviewed this matter. Joseph Kravitz, Correctional Counselor II, conducted the Appeal at the Second Level of Review on July 12, 2007.

**APPEAL ISSUE:** The original date of this appeal is October 8, 2006. This appeal was handled as a staff complaint and all allegations contained within the appeal were investigated. When this appeal was returned to you after the first level review the signatures were erroneously placed in the area for second review signatures. The dates of the signatures are November 11, 2006. Per the memo dated June 21, 2007 from the Inmate Appeals Branch the use of exonerated was not appropriate for the appeal. The wording that should have been used is denied.

**FINDINGS:** A review of your appeal, including staff's efforts to resolve the appeal at the informal level and at the first formal level, together with your responses, has been completed. All submitted documentation and supporting arguments of the appellant have been considered.

I, M. McLean, FNP, Health Care Manager, was assigned to investigate your allegations. J. Kravitz, CC II, reviewed your appeal and responses on July 12, 2007. You asked for a second level review on February 25, 2007. The appeal review completed by the first level reviewer was complete and your received adequate and appropriate care and treatment for the condition and symptoms described. The issues alleged in this appeal have been reviewed numerous times. Your request for an outside investigation is not warranted and is denied in this second level review. This concludes the review of this appeal at the second level.

**DECISION:** The Appeal is denied.

The appellant is advised that this issue may be submitted for a Director's Level of Review if desired.

JOSEPH KRAVITZ                    7-12-07
Correctional Counselor II         Date

                                  MAUREEN MCLEAN, FNP    Date
                                  Health Care Manager

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION
INMATE APPEALS BRANCH
P. O. BOX 942883
SACRAMENTO, CA 94283-0001

# DIRECTOR'S LEVEL APPEAL DECISION

Date: **DEC 2 0** 2007

In re:    Marc Dawson, P13296
High Desert State Prison
P.O. Box 270220
Susanville, CA 96127

IAB Case No.: 0702644        Local Log No.: PBSP-06-02533

This matter was reviewed on behalf of the Director of the California Department of Corrections and Rehabilitation (CDCR) by Appeals Examiner R. Pimentel, Facility Captain. All submitted documentation and supporting arguments of the parties have been considered.

**I    APPELLANT'S ARGUMENT:** It is the appellant's position that Psychiatric Technician (PT) Latham gave him the wrong medication which caused him to have a severe negative reaction. The appellant requests that an investigation be completed and that PT Latham be reprimanded.

**II   SECOND LEVEL'S DECISION:** The reviewer found that the appellant has not been subjected to misconduct on the part of named staff. The reviewer affirms that appropriate supervisory staff have been assigned to conduct an inquiry into this matter. Supervisory Registered Nurse II S. Bliesner reviewed the submitted material and interviewed the involved parties. Based upon developed information, it was determined that the allegation of staff misconduct was EXONERATED. In order to determine the facts, the inquiry arising from this appeal included his interview; interview of department employees; and review of current policies, laws, and procedures. Additional research may have included interviews of other inmate's or review of the appellant's central file. The First Level of Review (FLR) and Second Level of Review (SLR) denied the appeal.

**III  DIRECTOR'S LEVEL DECISION:** Appeal is denied.

**A.  FINDINGS:** Upon review of the documentation submitted, it is determined that the appellant's allegations have been reviewed and evaluated by administrative staff and an inquiry has been completed at the FLR and the SLR. In the event that staff misconduct was substantiated, the institution would take the appropriate course of action. The Director's Level of Review (DLR) notes that in this case the reviewer determined that the appellant's allegations were EXONERATED. All staff personnel matters are confidential in nature and not privy to the inquiries of other staff, the general public or the inmate population, and would not be released to the appellant. In this case, the institution has reported the disposition to the appellant. Although the appellant has the right to submit an appeal as a staff complaint, the request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the appeals process. Therefore no relief is provided at the DLR.

**B.  BASIS FOR THE DECISION:**
California Penal Code Section: 832.7, 832.8
California Code of Regulations, Title 15, Section: 3000, 3001, 3004, 3391
Administrative Bulletin 98/10: PROCESSING OF INMATE/PAROLEE APPEALS, CDC FORMS 602, WHICH ALLEGE STAFF MISCONDUCT

**C.  ORDER:** No changes or modifications are required by the Institution.

MARC DAWSON, P13296
CASE NO. 0702644
PAGE 2


This decision exhausts the administrative remedy available to the appellant within CDCR.

N. GRANNIS, Chief
Inmate Appeals Branch

cc:     Warden, HDSP
        Appeals Coordinator, HDSP
        Appeals Coordinator, PBSP

E X H I B I T    " D "

# EMERGENCY CARE FLOW SHEET
## CALIFORNIA DEPARTMENT OF CORRECTIONS
PBSP 7206

| DATE | 06-10-2006 | |
|---|---|---|
| | **IN** | **OUT** |
| | 1923 | 2003 |

| INMATE | NAME LAST | FIRST | CDC NUMBER | HOUSING | DOB |
|---|---|---|---|---|---|
| | DAWSON | MARC | P13296 | A01U203U | 01-14-1964 |

| TIME OF INCIDENT | LOCATION OF INCIDENT | MODE OF ARRIVAL |
|---|---|---|
| approx all day | cell | ambulatory |

| STAFF | NAME LAST | FIRST | OCCUPATION | SEX | AGE | DOB |
|---|---|---|---|---|---|---|
| | | | | | | |

**CHIEF COMPLAINT**

| | TB CODE | DATE OF LAST TETANUS |
|---|---|---|
| | 22 | unknown |

### MECHANISM OF INJURY
- [ ] STABBING
- [ ] PHYSICAL ALTERCATION
- [ ] GUNSHOT WOUND
- [ ] BURN
- [ ] SPORTS INJURY
- [ ] ON THE JOB INURY
- [x] OTHER

feeling jittery with strobing lights in eyes & like someone is pushing his head

### SKIN COLOR
- [x] NORMAL
- [ ] PALE
- [ ] ASHEN
- [ ] CYANOTIC
- [ ] FLUSHED

### SKIN TEMP
- [ ] HOT
- [ ] WARM
- [x] COOL
- [ ] COLD

### SKIN MOISTURE
- [x] NORMAL
- [ ] DRY
- [ ] MOIST
- [ ] PROFUSE

### CAPILLARY REFILL
- [x] < 2 SECONDS
- [ ] > 2 SECONDS
- [ ] NONE

### GLASCOW COMA SCALE

| TIME | EYE OPENING RESPONSE | BEST VERBAL RESPONSE | BEST MOTOR RESPONSE |
|---|---|---|---|
| 1940 | 4 | 5 | 6 |

### LUNG SOUNDS

| | RT | LT |
|---|---|---|
| CLEAR | [x] | [x] |
| WHEEZES | [ ] | [ ] |
| RALES | [ ] | [ ] |
| RHONCHI | [ ] | [ ] |
| DIMINISHED | [ ] | [ ] |
| ABSENT | [ ] | [ ] |

### RESP CHARACTER
- [ ] LABORED
- [x] UNLABORED
- [ ] PAINFUL
- [ ] SHALLOW
- [ ] DEEP
- [ ] RETRACTION
- [ ] NASAL FLARING

### EVIDENCE OF TRAUMA
- [ ] CHEST
- [ ] ABDOMEN
- [ ] G/U
- [ ] PELVIS
- [ ] BACK SPINE
- [ ] HEAD
- [ ] NECK
- [ ] EXTREMITIES
- [ ] OTHER

### VITALS

| TIME | TEMP | PULSE | RESP | BP | SaO2 |
|---|---|---|---|---|---|
| 06-10-2006 2001 | 97.6 | 82 | 20 | 123/84 | 98 |
| | | | | / | |
| | | | | / | |
| | | | | / | |

### CURRENT MEDICATIONS
NEURONTIN 250MG/5ML SOLN 1000 MG, OMEPRAZOLE 20MG CAPSULE DR 20 MG

| TIME | PUPIL RESPONSE | | PUPIL SIZE | |
|---|---|---|---|---|
| | R | L | R | L |
| 1940 | SL | B | 4 | 3 |

### MEDICATION ALLERGIES
ASPIRIN, NSAIDS, ASPIRIN, NSAIDS, N D CLEAR. NAPROXEN SODIUM, .

### ADMIN V

| TIME | NAME | SITE | GAUGE | RATE |
|---|---|---|---|---|
| | | | | |

### ADMIN

| TIME | ROUTE | RATE | SaO2 |
|---|---|---|---|
| | | | |

KEY C=CLOSE B=BRISK SL=SLUGGISH F=FIXED
3    4    5    6    7    8

### SIGNATURES
RN/MTA/MD
RN/MTA/MD
RN/MTA/MD
RN/MTA/MD

SUPERVISOR REVIEW
P Burns SRN II

### PATIENT DISPOSITION
RTC

MODE OF DEPARTURE  Aml.    TIME  2003

### PATIENT CONDITION ON DISCHARGE

## SOAP NOTATIONS
### SUBJECTIVE (PATIENT'S STATEMENTS, HISTORY)

### OBJECTIVE (PHYSICAL EVALUATION)

| DATE/TIME | DESCRIPTION | NOTES |
|---|---|---|
| | | |

| NAME (LAST, FIRST, MI) | DAWSON, MARC |
|---|---|
| CDC# | P13296 |

| TIME | DESCRIPTION | ASSESSMENT (NURSING DIAGNOSIS) NOTES |
|---|---|---|
| | | |

| TIME | DESCRIPTION | PLAN/PT EDUCATION, FOLLOWUP, MD ORDERS, ETC.) NOTES |
|---|---|---|
| 06-10-2006 2000 | DIPHENHYDRAMINE 25MG CAPLET | VO Risenhoover FNP |
| | | |
| | | |

## Notes:

06-10-2006 2003    S-" I took the wrong medicine Thursday & this muscle, eye & neck things started Friday in group."
O- A&O x4, resp even & unlabored, skin cool & dry with good capillary refill, eyes react to light but R pupil is one size larger than L pupil, MAE. Muscles in arms & legs are twitching & jumpy. Head is bent forward & states feels like someone is pushing it down. Can't put his neck straight so head is upright. Denies any pain-just above problems.
A- alt in sensory perception R/T muscle, eye & neck problems.
P- MOD called & report given. New orders received. Instructed to rest & drink lots of water. To see PCP on Monday 6-12-06
for all his symptoms. RTC.   M Edwards RN

Page 2 of 2

| NAME (LAST, FIRST, MI) | DAWSON, MARC |
|---|---|
| CDC# | P13296 |

E X H I B I T    " E "

# INMATE/PAROLEE
# APPEAL FORM
CDC 602 (12/87)

Location: Institution/Parole Region _____    Log No. _____    Category _____

1. _____    1. _____

2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME Marc Dawson | NUMBER P13286 | ASSIGNMENT Act-Seg | UNIT/ROOM NUMBER A-1-203L |

A. Describe Problem: On June 8th, 2006, I was given an unknown liquid medication that has caused me severe problems over a three day period and still continues to cause me problems. On June 10th, RN Edwards at the CTC put me on Doctor line for the 12th. I asked the unit STE's on the 12th and again on the 13th if I was seeing a Doctor. I was told "No". To me, it seems like this problem is trying to be swept under a rug and ignored. I still have blurriness in my right eye, headaches, and my neck gets stiff for no reason at times. Please respond to

If you need more space, attach one additional sheet. this 602 at the informal level first. —

B. Action Requested: To be seen by a Doctor. I didn't cause this problem. I wasn't the one who gave myself almost 3/4 of a fluid ounce of unknown liquid medication. A problem was created by a Psych Tech and this needs to be addressed. Thank you!

Inmate/Parolee Signature: Marc Dawson    P13286    Date Submitted: 6-14-06

C. INFORMAL LEVEL (Date Received: 6-14-06 )

Staff Response: Partically granted. You are scheduled to see the Doctor for this issue

Staff Signature: _____    Date Returned to Inmate: 6-14-06

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

_____

_____

Signature: _____    Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number: _____

E X H I B I T   " F "

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location: PBSP

Institution/Parole Region

1. _____  1. _____

2. _____  2. _____

Log No.

Category 8.14
annotation on
records

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME Marc Dawson

NUMBER P13296

ASSIGNMENT Ad-Seg

UNIT/ROOM NUMBER A1-203L

A. Describe Problem: On 6-15-06, I had an appointment with Dr. Jain and after reading her notes, there are several things wrong that need to be fixed and noted in my medical file. These are the errors that need to be addressed:

Issue #1:

On the printed form 6-15-06 under the heading of "PLAN", Dr. Jain states: "in the clinic he was noted to have RT eye twitching (intentional)". I am challenging this statement, especially the "(intentional)" notation.

If you need more space, attach one additional sheet. Additional Page Attached #

B. Action Requested: Rewrite these entries properly and place the redone entries onto my medical file ASAP as I have pending matters with my eye still to be medically addressed.

Inmate/Parolee Signature: Marc Dawson P13296     Date Submitted: 6-21-06

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

Staff Signature: _____     Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

_____

Signature: _____     Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

JUN 2 3 2006
26

A. Describe Problem (Continued):

I am enclosing the printouts from the clinic on 6-10-06, the information she would have relied upon for this information. No where does it state that I had any "intentional" eye twitching in my RT Eye. My RT Eye was never in question at any time. It was, and is, my LT Eye that will not focus properly. I always tell examiners not to worry about my RT Eye anyhow because I had a fractured brow that was caused from a boxing injury when I was younger. I have obvious differences in brow structure now and due to this injury, I have a flinching problem whenever something get near my RT eye. That is why I always tell them to ignore it! Once again, there was not any mention of my reported "Intentional" flinching or twitching on the report from the Clinic. Dr. Jain misread something and this needs to be corrected.

Issue #2:

In the presence of the 2 Escorting Officers (C/o Wilcox & C/o Cardanas) and the RN "Vic", I told Dr. Jain that I had experienced white starbursts when my eye (RT) was shut on Friday and Saturday (June 9th and 10th Respectively) and now I was not able to focus it properly and had headaches that felt like they was behind my LT eye. I told her this "twice"! I never said anything about any eye twitching in my LT eye! In the printout from 6-15-06, under the heading "Subjective", she states: "inmate states that his symptoms are improving and ext (?) twitching is gone now he has twitching (sp) in LT Eye only. Also c/o blurring in the same eye denies headache". This is so wrong! I never mentioned any twitching, told her about my focusing problem (did eye test - RT 20/20 / LT 20/50) and specifically told her about the headaches behind my eye. Very By

1)

Continued →

E X H I B I T    " G "

Visit Start Dt/Tm: 06-15-2006 1300    Encount    pe: SICK CALL

Visit Reason: FU 5DAY HIGHER LVL CARE

## Subjective

**Entry Date:** 06-15-2006 1244                    **Entered By:** MPIMSBJ , JAIN, MD

**Updated Date:** 06-15-2006 1247                **Updated By:** MPIMSBJ , JAIN, MD

inmate is here for FU of his CTC visit on 0n 6/10. as per inmate on 6/9n he started having twitching of eyes and extrimities . inmate states on 6/8 he received wrong medication in place of neurontin nad that is causing all symptoms . inmate was seen by psychiatrist and was given diphenhydramine. inmate states that his symptoms are improving and ext twitching is gone now he has twiching in Lt eye only. also c/o blurring in the same eye.denies headache. but feels tight lump in back of head.no nausea vomitting. dyaphagia.

**Entry Date:** 06-15-2006 1244                    **Entered By:** MPIMSBJ , JAIN, MD

**Updated Date:** 06-15-2006 1511                **Updated By:** MPIMSBJ , JAIN, MD

inmate is here for FU of his CTC

**Entry Date:** 06-15-2006 1244                    **Entered By:** MPIMSBJ , JAIN, MD

**Updated Date:** 06-15-2006 1521                **Updated By:** MPIMSBJ , JAIN, MD

inmate is here for FU of his CTC visit on 0n 6/10. as per inmate on 6/9n he started having twitching of

## Objective

### Other

**Name:** progress note

**Provider:** JAIN, MD , BHAWNA                    **Other Dt/Tm:** 06-15-2006 1521

**Notes:** HEENT- no neck rigidity, pupil RT bigger than left reactive to light. EOM wnl b/l
cranial nerve wnl.
lung clear cvs s1 s2 wnl badomen soft nontender
neuro- aaox3

| PHYSICIAN'S PROGRESS NOTES | **CDC #:** P13296 |
|---|---|
| | **Name(L.F.M.S):** DAWSON, MARC |

CDC 7230
STATE OF CALIFORNIA          DEPARTMENT OF CORRECTIONS

**Assessment**

## Medical Diagnosis

Code: 379.90    Description:   EYE DISORDER NOS
Axis:      GAF:        Status:   CURRENT    Provider:   JAIN, MD, BHAWNA
Diagnosis Dt/Tm: 06-15-2006 1524    Resolve Dt/Tm: 00-00-0000 0000    Priority:
Notes:


Code:  V68.1    Description:   ISSUE OF REPEAT PRESCRIPTIONS
Axis:      GAF:        Status:   CURRENT    Provider:   MCLEAN, FNP, MAUREEN
Diagnosis Dt/Tm: 08-15-2005 0859    Resolve Dt/Tm: 00-00-0000 0000    Priority:
Notes:


Code:  999999    Description:   ALT.IN COMFORT R/T R.FOOT BURNING
Axis:      GAF:        Status:   CURRENT    Provider:   FELLOWS, RN, BARBARA
Diagnosis Dt/Tm: 08-15-2005 0849    Resolve Dt/Tm: 00-00-0000 0000    Priority:
Notes:


Code:  999999    Description:   PERONEAL NERVE INJURY
Axis:      GAF:        Status:   CURRENT    Provider:   MCLEAN, FNP, MAUREEN
Diagnosis Dt/Tm: 09-23-2005 1421    Resolve Dt/Tm: 00-00-0000 0000    Priority:
Notes:


## Plan

**Provider:**  JAIN, MD , BHAWNA        **Plan Dt/Tm:**  06-15-2006 1525    **Completed By:**
**Completed Dt/Tm:**            **Patient Education:**  N    **Phone Order Status:**   NONE
   **Entry Date:** 06-15-2006 1525        **Entered By:** MPIMSBJ, JAIN, MD

inmate symptoms doesnot fit any common medical diagnosis . in the clinic he was noted to have RT eye twitching( intentional)
but he says he has problem with LT. will order optometry evaluation . continue benadryl as prescribed.
will also order urine and serum tox.
Rtc in 1 WK


| | |
|---|---|
| **PHYSICIAN'S PROGRESS NOTES** | **CDC #:**  P13296 <br> **Name(L.F.M.S):**  DAWSON, MARC |
| CDC 7230 <br> STATE OF CALIFORNIA        DEPARTMENT OF CORRECTIONS | |

<u>E X H I B I T</u>   " H "

## Plan

| | | |
|---|---|---|
| **Provider:** JAIN, MD , BHAWNA | **Plan Dt/Tm:** 06-22-2006 1057 | **Completed By:** |
| **Completed Dt/Tm:** | **Patient Education:** N | **Phone Order Status:** NONE |
| **Entry Date:** 06-22-2006 1057 | **Entered By:** MPIMSBJ, JAIN, MD | |

It seems that discrepancy in last exam and symptoms were not intentional and inmate does have problem with RT eye in the past and gets twitching because of that.
inmate is scheduled for optometry exam tomorrow. will FU after that.
will also FU on pending labs.
RTC in 1 wk.

## Order

### Treatments

| Start Dt: | CPT | Treatment | Freq | Anatomical Location | Provider |
|---|---|---|---|---|---|
| 06-22-2006 1100 | 99999 | PCP FU | NA | | JAIN, MD, BHAWNA |

| | |
|---|---|
| **PHYSICIAN'S PROGRESS NOTES** | **CDC #:** P13296<br>**Name(L.F.M.S):** DAWSON, MARC |
| CDC 7230<br>STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS | |

E X H I B I T    " I "

| | | |
|---|---|---|
| QUEST DIAGNOSTICS INCORPORATED | PATIENT INFORMATION<br>**DAWSON, P13296** | REPORT STATUS **Final** |
| | DOB: 01/14/1964  Age: 42<br>GENDER: M | ORDERING PHYSICIAN<br>**JAIN, BHAWNA** |

SPECIMEN INFORMATION
SPECIMEN:    EL1031567
REQUISITION: 41077100080149
LAB REF NO:  A1-203

ID: P13296

CLIENT INFORMATION
4107710
PELICAN BAY STATE PRISON
CLINICAL LABORATORY
5905 LAKE EARL DR
CRESCENT CITY CA 95531

COLLECTED: 06/16/2006    00:00
RECEIVED:  06/17/2006    01:05
REPORTED:  06/22/2006    11:34

| Test Name | In Range | Out of Range | Reference Range | Lab |
|---|---|---|---|---|
| HALOPERIDOL (HALDOL) | | | | NI |
| HALOPERIDOL | | <0.5 L | ng/mL | |
| | Reference Range:<br>5-15<br>TOXIC: 50 OR MORE | | | |
| TRIHEXYPHENIDYL (ARTANE) | | | | MX |
| TRIHEXYPHENIDYL | | <2.0 L | 5.0 - 40.0 ng/mL | |

----------------------------------------------------------------------------------

**Performing Laboratory Information:**

MX    Med Tox 402 W. Country Road St. Paul MN  55112 Laboratory Director: Jennifer A. Collins,

NI    Nichols Institute 33608 Ortega Hwy. San Juan Cap CA  92675 Laboratory Director: R.A. Reitz, MD.

SC    Quest Diagnostics 3714 Northgate Boulevard Sacramento CA  95834 Laboratory Director: Gerald E. Simon, M.D.

DAWSON, P13296 - EL1031567

Page 1 - End of Report

*EXHIBIT "A"*

E X H I B I T    " J "

8.   If the inmate-patient who is under a Keyhea order refuses *a single dose* of medication, and a "back-up" medication is ordered, the nurse/LPT shall determine the safety of administering the back-up medication at the facility medication administration area. If it is determined to be safe, the medication shall be administered at the facility. If it is determined the safety of the inmate-patient or staff is at risk, the nursing/LPT staff shall obtain an order from the treating psychiatrist to transport the inmate-patient to the CTC for placement into 5-point restraints. The inmate-patient shall be released and returned to his housing after administration of the medication unless otherwise determined by the psychiatrist. After normal business hours, the CTC RN shall contact the POC for orders.

9.   If the inmate-patient who is under a Keyhea order refuses *a single dose* of medication, and **no** "back up" medications are ordered, the outpatient facility clinic, during normal business hours, shall contact the facility psychiatrist for instructions. After normal business hours, the outpatient clinic staff shall contact the CTC RN who shall contact the Psychiatric On-Call for instructions.

I.   Medication Errors

1.   Upon recognition of a medication error the inmate-patient shall be monitored for signs and symptoms of an adverse drug reaction.

2.   Appropriate documentation of the medication and dose given shall be recorded on the reverse side of the MAR.

3.   The prescribing authorized person or, after hours, the Physician/Psychiatrist on call shall be notified for further directives. If physician's orders are received, they shall be documented on a Physician's Order form ( CDC 7221).

4.   The RN/MTA or LPT identifying the medication error shall complete a Medication Incident Report and shall submit it to the Director of Nursing (DON) for review and follow-up.

5.   Upon receipt of the Medication Incident Report, the DON shall notify the supervisor of the nurse/psychiatric technician responsible for the error.

6.   The DON shall sign the report and forward it to the pharmacy.

7.   The pharmacy shall maintain the original Incident Report.

8.   The employee and the supervisor shall discuss how the error could have been avoided. The Nursing Supervisor shall determine the appropriate action to be taken based on the severity of the error.

9.   If the error is due to Pharmacy mislabeling, a medication or filling a prescription incorrectly, the medication shall be returned to the Pharmacy immediately.

J.   Medication Renewals

1.   Inmate-patients with on-going conditions such as a chronic disease process or mental health conditions shall be scheduled for an appointment with the PCP/Psychiatrist prior to the expiration of essential medication.

2.   Additionally, on a weekly basis, the pharmacist shall provide the clinic RN with a listing of individual essential medications that will be expiring within one week.

3.   The RN shall review the list for renewal and if indicated, schedule those inmate-patients for an appointment prior to the expiration of the medication.

E X H I B I T    " K "

# STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

**YEAR 2006**   **MONTH June**

## MEDICATION ADMINISTRATION RECORD

Installation: **CDC NUMBER: P13296**   NAME (LAST, FIRST, MI): **DAWSON, MARC**   **PBSP**

CR-7231-A (7/94)   Page 1 of 3

| MEDICATION DOSE ROUTE SITE | Time | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ABAPENTIN Dr. YANCHA PSYMD. SEG<br>EURONTIN 250MG/5ML SOLN   1000 MG<br>Req. BID   Rte: PO   Site:<br>Start: 03-03-2006   Stop: 06-01-2006 Disc: 05-22-2006 | 00<br>06<br>12<br>18 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MEBRAZOLE Dr. MALO CLINES, FNP, CI<br>MEBRAZOLE 20MG CAPSULE DR   20 MG<br>Req. QD   Rte: PO   Site:<br>Start: 04-03-2006   Stop: 09-30-2006 Disc: | 00<br>06<br>12<br>18 | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| ABAPENTIN Dr. RUBEN PSYMD. SAM<br>EURONTIN 250MG/5ML SOLN   1000 MG<br>Req. BID   Rte: PO   Site:<br>Start: 05-22-2006   Stop: 09-30-2006 Disc: 07-14-2006 | 00<br>06<br>12<br>18 | | VMG<br>IRK | VMG<br>IRK | ES<br>IRK | JRE<br>IRK | ALJ<br>IRK | ALJ<br>ES | VMG<br>VMG | SML<br>SML | IRK<br>JAT | IRK | VMG<br>VMG | VMG<br>VMG | AGT | JAT<br>IRK | JAT<br>IRK | JAT<br>IRK | VMG<br>VMG | VMG<br>AGT | VMG<br>AGT | VMG<br>IRK | JAT<br>IRK | IRK | JAT<br>IRK | VMG<br>IRK | ES<br>AGT | VMG<br>AGT | SML<br>IRK | VMG |
| IPHENHYDRAMINE HCL Dr. HUTCHINSON PSYMD.<br>IPHENHYDRAMINE 50 MG CAP   50 MG<br>Req. STAT   Rte: PO   Site: | 00<br>06<br>12<br>18 | RWR | IRK | IRK | IRK | IRK | JEH | | | | | | | | | | | | | | | | | | | | | | |
| IPHENHYDRAMINE HCL Dr. RISENHOOVER, FNP, S<br>IPHENHYDRAMINE 25MG CAPLET   50 MG<br>Req. STAT   Rte: PO   Site:<br>Start: 06-10-2006   Stop: 06-12-2006 Disc: 06-12-2006 | 00<br>06<br>12<br>18 | | | | | | | SER | | | | | | | | | | | | | | | | | | | | | |

### SIGNATURE / INITIALS

| SIGNATURE | INITIALS | SIGNATURE | INITIALS |
|---|---|---|---|
| MPIMSAGT | AAE | MPIMSAAE | AAE |
| MPIMSAGT | ALJ | MPIMSALJ | ALJ |
| MPIMSAWW | BRW | MPIMSBRW | BRW |
| MPIMSCAB | CIR | MPIMSCIR | CIR |
| MPIMSCLM | CLR | MPIMSCLR | CLR |
| MPIMSDAG | EBP | MPIMSEBP | EBP |
| MPIMSES | GHG | MPIMSGHG | GHG |
| MPIMSHJP | IRK | MPIMSIRK | IRK |
| MPIMSJT | | MPIMSIRK | |

**Injection Site Codes:**
(1) RIGHT UPPER OUTER QUADRANT   (6) LEFT THIGH
(2) LEFT UPPER OUTER QUADRANT   (7) RIGHT ABDOMINAL
(3) RIGHT DELTOID   (8) LEFT ABDOMINAL
(4) LEFT DELTOID   (9) RIGHT VENTRAL GLUTEUS
(5) RIGHT THIGH   (10) LEFT VENTRAL GLUTEUS

COPY   COPY

EXHIBIT "D"

E X H I B I T    " L "

Exhibit "J"

STATE OF CALIFORNIA
CDC 22 (8/92)

# INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS

| | |
|---|---|
| DATE | 6/25/06 |
| HOUSING | A |
| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | |
| TO (NAME AND TITLE OF PERSON) | M. Dawson |
| WORK ASSIGNMENT | Med Leg |
| BED NUMBER | 203C |
| FROM | Medical Records |
| CDC NUMBER | P13296 |
| JOB NUMBER FROM | TO |
| ASSIGNMENT HOURS FROM | TO |

Re: Entries made by S. Latham, P.T.

### Clearly state your reason for requesting this interview.

You will be called in for interview in the near future if the matter cannot be handled by correspondence.

Hello. I received the documents that you sent but there were no entries into my medical file on the 8th or 9th of June 2006, and I can that there might be? Would you please recheck and send me entries (cdc-193 attached) - if not. Please let me know that there are no entries for those dates. (Thank You!)

INTERVIEWED BY _____ NCT I

DISPOSITION

The only entry for the Medical Record is June 10 from the E.R. Nothing from the 8th or 9th of June 2006.

* DON'T REPLACE! — Permanent Appeal Attachment A

Do NOT write below this line. If more space is required, write on back.

Date: 6/29/06

Wayne Jackson 215246
P.O. Box 3030, B3-209
High Desert State Prison
Susanville, Ca. 96127-3030

LEGAL MAIL

B3

STATE PRISON

Northern District Court
Northern District of California
U.S. Courthouse
450 Golden State Avenue
San Francisco, Ca. 94102-3483

LEGAL MAIL

RECEIVED
FEB – 6 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA



PRIORITY
MAIL
UNITED STATES POSTAL SERVICE®
www.usps.com
Label 107R February 2006