```
Marc Dawson
P.O. Box 3030, B3-209
High Desert State Prison
Susanville, CA  96127-3030
CDCR #P-13296

In Pro Per
```

**FILED**

JUL 21 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Marc Dawson,

    Plaintiff,

v.

S. Latham, et al.,

    Defendants,

No. C 08-0741 JF (PR)

REQUEST FOR ADMISSIONS

(SET ONE)

(Fed.R.Civ.P.36)

PROPOUNDING PARTY:    PLAINTIFF MARC DAWSON

RESPONDING PARTY:    DEFENDANT S. LATHAM

SET NUMBER:    ONE

TO DEFENDANT AND HER COUNSEL OF RECORD:

PLEASE TAKE NOTICE that pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff MARC DAWSON hereby requests that the Defendant, S. LATHAM is to make the following admissions within 30 days after service of this request.

1. S. Latham was employed by the California Department of Corrections and Rehabilitation on June 8th, 2006, at Pelican Bay State Prison in Crescent City.

2. S. Latham was assigned as a Psych Tech in Pelican Bay's Administrative Segregation Building 1 on June 8th, 2006.

3. S. Latham was in charge of distributing the P.M. medication to inmates housed in Building A-1 on June 8th, 2006.

4. S. Latham was the only Psych Tech working in Building A-1 on June 8th, 2008.

5. S. Latham was in charge of verifying the amounts of medications placed into individual distribution cups on June 8th, 2006.

6. Once the medications are placed into the individual distribution cups, they are then placed in a medication tray in a manner of arrangement that reflects the inmates name and cell location.

7. Once the medication trays are completed, said trays are then placed on a medication cart which is used to transport the medications into the buildings in which the inmates, who take the medications, are located.

8. The medications on these carts were S. Latham's responsibility on June 8th, 2006, during the P.M. medication rounds.

9. S. Latham was the only individual passing out the P.M. medication that was given to inmates in Building A-1 on June 8th, 2006.

10. Correctional Officers do not pass out medications.

11. Inmates do not pass out medications.

12. The Plaintiff was housed in A-1, cell 202, on June 8th, 2006.

13. S. Latham began her Medication rounds at cell 101 in A-1 on June 8th, 2006.

14. Cell 101 through 132 are located on the bottom tier in Building A-1.

15. Cell 201 through 232 are located on the top tier in Building A-1.

16. By starting her medication rounds at cell 101, S. Latham would take a route that would proceed from cell 101, across the entire bottom tier, ending with cell 132.

17. S. Latham took this route on June 8th, 2006.

18. When the bottom tier was completed, the medication cart is then taken

Marc Dawson
CDCR P-13296, P.O. Box 3030, Susanville, CA 96127

Dawson v. Latham, et al.
No. C 08-0741 JF (PR)

Request for Admissions

(2)

1 | upstairs to distribute medication to the upper tier, beginning at cell 232.

2 |     19. S. Latham took this route on June 8th, 2006.

3 |     20. Once the cart is on the upper tier, the route takes the medication cart
4 | from cell 232 to 201, in which the medication pass is completed.

5 |     21. S. Latham took this route on June 8th, 2006.

6 |     22. S. Latham stopped in front of cell 202 to distribute medication, to the
7 | Plaintiff, on June 8th, 2006.

8 |     23. The liquid medications were already prepoured into the medication cups,
9 | before entering A-1, on June 8th, 2006.

10 |     24. During the P.M. medication pass, S. Latham gave the PLaintiff his medi-
11 | cation, i.e. approximately 20cc's of liquid neurontin, on June 8th, 2006.

12 |     25. The Plaintiff, accepted the liquid medication on June 8th, 2006.

13 |     26. After swallowing the medication, Plaintiff promptly informed S. Latham,
14 | in the presence of the escorting officers, that the medication just digested was not
15 | his normal medication, i.e. nuerontin.

16 |     27. S. Latham, after a discussion on the identity of the medication she had
17 | just given the Plaintiff, stated that she would check on the medication.

18 |     28. Ten to Fifteen minutes after the Plaintiff had taken the initial cup of
19 | liquid medication, S. Latham returned with a second cup of liquid medication.

20 |     29. S. Latham informed the Plaintiff that the consistency of liquid was not
21 | the same from the first bottle of medication to the second bottle.

22 |     30. S. Latham distributed a second cup of medication to the PLaintiff.

23 |     31. On June 8th, 2006, S. Latham was working a double 8 hour shift.

24 |     32. On June 8th, 2006, during the P.M. medication rounds, S. Latham, in the
25 | course of working a double shift, was in the second 8 hour shift of the double shift
26 | in which she went from the first shift directly into the second.

27 |     33. S. Latham uses the Initials "SML" when signing the "MAR", the roster in
28 | which medication distribution is recorded.

Marc Dawson, P-13296, P.O. Box 3030, Susanville, CA 96127

Dawson v. Latham, et al.  
No. C 08-0741 JF (PR)

(3)

Request for Admissions

34. On June 8th, 2006, S. Latham signed the "MAR" using the initials "SML".

35. By signing the "MAR", S. Latham indicated that she had distributed medication to the Plaintiff at approximately 1800 hours.

36. The "MAR" lists the name of the medication to be distributed.

37. The "MAR" indicates the amount of medication to be distributed.

38. Pelican Bay State Prison's Medical Department uses a policy manual that states, in writing, what procedures are to be followed in certain circumstances.

39. Psych Techs, R.N.'s, and other medical staff are required to have knowledge and familiarization with all medical policy manuals used at PBSP.

40. There was a medical policy manual in use on June 8th, 2006.

41. In the medical policy manual, in which procedures are explained within, there is a heading entitled "Medication Management".

42. Under the heading of "Medication Management", a section entitled "Medication Errors" explains the procedures to be implemented when a medication error has happened.

43. The page on which this procedure is explained is "IVA-4-8".

44. Under the "Medication Errors" heading, number 1 notifies medical staff, upon recognition of a medication error, shall monitor the inmate/patient..."

45. According to the "Medication Errors" section, number 1, this monitoring is to be done to identify any signs and symptoms of an adverse drug reaction.

46. S. Latham did not monitor the Plaintiff for any signs of an adverse reaction to the administered drugs on June 8th, 2006.

47. S. Latham did not check or record the Plaintiff's vital signs after the medication error was reported to her on June 8th, 2006.

48. Under the "Medication Errors" heading, number 2 notifies medical staff, after medication error has been reported, to document the medication and doses given on the "MAR".

49. S. Latham did not, at any time during the month of June, 2006, document

Marc Dawson
P-13296, P.O. Box 3030, Susanville, CA 96127

Dawson v. Latham, et al.
No. C 08-0741 JF (PR)

(4)

Request for Admissions

1 | the possibility of a medication error happening on June 8th, 2006.

50. S. Latham did not check on the Plaintiff's health on June 8th, 2006, at any time after she was notified, by the Plaintiff, of the medication error.

51. After working a double shift on June 8th, 2006, which ended at approximately 2200 hours, S. Latham returned to work on June 9th, 2006, to begin her shift, at approximately 0600 hours.

52. On June 9th, 2006, S. Latham was assigned to Building A-1.

52. On June 9th, 2006, S. Latham was assigned as a Psych Tech in A-1.

53. Plaintiff was escorted into what was referred to as the "Nurses Office" located in the A-1 rotunda, for health problems while attending group therapy.

54. S. Latham instructed the escorting officers to place the Plaintiff into a stand up holding cage covered with plexiglass.

55. At no time did S. Latham monitor and record the Plaintiff's vital signs during this medical visit or at any other time on June 9th, 2006

56. After Doctor Hutchinson arrived in the nurses office, he inquired about the medication that was given to the Plaintiff on June 8th, 2006, and S. Latham said that there was a different consistency between the first bottle and that of the second bottle.

57. Doctor Hutchinson asked S. Latham if the medication in the first bottle had been identified to which S. Latham said "No".

58. Doctor Hutchinson asked S. Latham where the bottle was to which she replied that she had thrown it out the night before.

59. S. Latham never monitored the Plaintiff's vital signs or record them at any time after the medication error occurred.

Dated: July 11th, 2008        /s/ _Marc Dawson, Plaintiff_
                                   Marc Dawson, Plaintiff in Pro Per

///

Dawson v. Latham, et al.                                    Request for Admissions
No. C 08-0741 JF (PR)

Marc Mason V13296
P.O. Box 7500, B3-209
High Desert State Prison
Susanville, CA 96127-8030

Legal Mail

STATE PRISON

Northern District Court
of California
280 First Street 460 South First St.
Room 2112
San Jose, CA 95113-3095

STATE PRISON



HIGH DESERT STATE PRISON
$01.68
US POSTAGE